UNITED STATES of America
v.
CHRISTIE INDUSTRIES, INC.
Edwin C. Christie.

Appeal of Edwin C. CHRISTIE.

No. 71–1831.

United States Court of Appeals, Third Circuit.

Argued July 11, 1972.

Decided Aug. 3, 1972.

Gerald W. Conway, Schreiber, Conway, Reiseman & Michals, Newark, N. J., for appellants.

Carolyn E. Arch, Asst. U. S. Atty., Newark, N. J., for appellee.

Before ALDISERT, MAX ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

Appellant Edwin C. Christie was convicted by a jury for violating 18 U.S.C. § 401(3) by failing to obey a preliminary injunction that had been entered by the District Court. Christie was sentenced to imprisonment for one year, and appeals from the conviction and sentence.

The preliminary injunction was entered in a civil action brought by the United States against Christie and his company Christie Industries, Inc., on June 16, 1967. The complaint charged that the defendants were shipping firecracker assembly-kits and components thereof to children through interstate commerce; that the firecracker components were "banned hazardous substances" within the scope of 15 U.S.C. §§ 1261(f)(1)(A)(v), (vi) and 1261(q)(1);[1] and that the defendants were violating 15 U.S.C. § 1263(a) by shipping the firecracker components in interstate commerce. After a hearing on June 26, 1967, the District Court ruled in favor of the Government and directed that an order be prepared to grant the Government's request for a preliminary injunction.

On September 11, 1967, the preliminary injunction was entered, the text of which is set out in full in the margin.[2] Although the recitals state that the firecracker assembly-kit is comprised of various components, the order itself merely forbids dealing in "the aforesaid fireworks assembly-kits."

On April 4, 1968, the Government filed in the District Court a Petition for Order to Show Cause in criminal contempt, charging that Christie and his company had violated the preliminary injunction during the period Septem-

1. Subsection (q) was added to 15 U.S.C. § 1261 by the Child Protection Act of 1966, P.L. 89-756, § 3(a). For a review of federal legislation dealing with distribution of hazardous substances in interstate commerce, see R. B. Jarts, Inc. v. Richardson, 438 F.2d 846, 848-50 (2d Cir. 1971).

2. "This matter being opened to the Court on the return date set by this Court of the Order to Show Cause with Temporary Restraining Order Pending Hearing Thereon, entered in the premises on June 19, 1967, on the application of David M. Satz, Jr., United States Attorney for the District of New Jersey, appearing by Assistant United States Attorney Carolyn E. Arch, attorney for the plaintiff, in the presence of N. Patrick Quirk, Esq., attorney for the defendants, for the issuance of a Preliminary Injunction in the premises, to be made effective during the pendency of the above entitled action, restraining the defendants, their officers, agents, servants, employes, and any and all persons in active concert or participation with any of them, from preparing, packaging, promoting, selling, distributing, introducing and causing to be introduced and delivering and causing to be delivered for introduction into interstate commerce firecracker assembly-kits on the ground that they are banned hazardous substances within the meaning of the Child Protection Act of 1966 (Public Law 89-756), 15 U.S.C. 1261(q)(1).

"It appearing to the Court, upon consideration of the testimony of the witnesses and other evidence submitted herein that the defendants, are variously engaged in packaging, preparing, promoting, selling, distributing, introducing and causing to be introduced and delivering and causing to be delivered for introduction into interstate commerce firecracker assembly-kits each containing cylinder casings, cup-like end caps, fuse coil, one plastic bag containing potassium nitrate and one plastic bag containing aluminum powder and sulfur, individually, jointly, by through and under the names of 'Ecco' Ecco Products, 'Rocket Supply Co.'

"That, the aforesaid components of the aforesaid fireworks assembly-kits, when prepared in accordance with the instructions provided by the defendants will cause explosions from which serious injury can result;

"That, therefore, the aforesaid fireworks assembly-kits are banned hazardous substances within the intent and meaning of the Child Protection Act of 1966 (Public Law 89-756), 15 U.S.C. 1261(q)(1);

"It is, therefore, on this 11th day of September 1967

ORDERED that the defendants, Christie Industries, Inc., a corporation and Edwin C. Christie, an individual, and any of their officers, agents, servants, employees, and all persons in active concert or participation with any of them, be and they are hereby restrained effective during the pendency of the above-entitled action, from preparing, packaging, promoting, selling, distributing introducing, and causing to be introduced, and delivering and causing to be delivered for introduction into interstate commerce the aforesaid fireworks assembly-kits, individually, jointly, by, through or under the names of 'Ecco,' Ecco Products, 'Rocket Supply Co.' or any other trade name or corporate entity."

ber–December, 1967. After a trial on June 18–19, 1968, the District Court found the defendants guilty of contempt and fined each of the defendants $2500. On appeal from that conviction this court reversed, United States v. Christie Industries, Inc., 465 F.2d 1000 (3 Cir., 1971). We held:

"[T]he government has failed to prove an essential element of the criminal contempt, viz., that the *defendants* violated the injunction." 1001 (emphasis added; footnote omitted).

The evidence in that case was that children received fireworks kits from "Ecco," "Ecco Products," or "Rocfuel Ltd.," but there was no evidence that the defendants were connected with those entities at the time the injunction was alleged to have been violated.

On June 24, 1969, while the first appeal was pending, the Government filed a second Petition for Order to Show Cause in criminal contempt, charging that Christie and his company had violated the preliminary injunction during the period December 1967–November 1968. After a seven-day trial in November and December 1970, the jury returned a verdict of guilty on each of the eight separate charges. On July 15, 1971, Christie was sentenced to imprisonment for one year on the second conviction, which is before us on this appeal.[3]

## I. SUFFICIENCY OF THE EVIDENCE

Christie contends that the evidence was insufficient to support a finding that he had violated the preliminary injunction. Our analysis on this question must begin with the preliminary injunction itself.

Although the Government's complaint in the civil action requested that the defendants be enjoined from shipping "any firecracker assembly-kit, or any similar article, or any component of said firecracker assembly-kits," the preliminary injunction itself referred only to "the aforesaid fireworks assembly-kits." In the recital of the preliminary injunction, the assembly-kits had been stated to contain the following five components: (1) "cylinder casings"; (2) "cup-like end caps"; (3) "fuse coil"; (4) "one plastic bag containing potassium nitrate"; and (5) "one plastic bag containing aluminum powder and sulfur." Thus phrased, the preliminary injunction was in keeping with the following colloquy between defense counsel and the District Court which took place after the Court had ruled in favor of the Government in the civil action and had directed that an order be prepared:

"MR. QUIRK: If your Honor please, could we perhaps be more specific in what the terms of the injunction would read? I assume that the items prepared today are enjoined from any further use?

"THE COURT: That particular package is.

"MR. QUIRK: That's right.

"THE COURT: That is all they are asking for.

"MR. QUIRK: All right, sir." (App., p. 2a).

Christie argues here that the preliminary injunction covered nothing more than shipments of the "kit" as such. We disagree that the preliminary injunction must be read so narrowly.

It is true, as Christie argues, that a person will not be held in contempt of an order unless the order has given him fair warning that his acts were forbidden. In a recent case this court has stated:

"The longstanding, salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt."

Ford v. Kammerer, 450 F.2d 279, 280 (3d Cir. 1971); accord, Lichtenstein v. Lichtenstein, 425 F.2d 1111 (3d Cir.

---

3. Although Christie Industries, Inc. was also convicted, no sentence was imposed and thus no appeal has been taken.

1970); In re Rubin, 378 F.2d 104 (3d Cir. 1967).

■ But this is not to say that where an injunction does give fair warning of the acts that it forbids, it can be avoided on merely technical grounds. The language of an injunction must be read in the light of the circumstances surrounding its entry: the relief sought by the moving party, the evidence produced at the hearing on the injunction, and the mischief that the injunction seeks to prevent. John B. Stetson Co. v. Stephen L. Stetson Co., 128 F.2d 981, 983 (2d Cir. 1942); see Haskell v. Kansas Natural Gas Co., 224 U.S. 217, 223, 32 S.Ct. 442, 56 L.Ed. 738 (1912). It is with these precepts, and the particular charges to be recounted in detail below, in mind that the following holdings are reached.

■ First, we hold that the preliminary injunction is violated by the shipment in a single package of components that made up the "kit," even though the components were sold separately and were not advertised or sold as a "kit." To hold otherwise would be to allow avoidance of the preliminary injunction through a mere change of terminology.[4]

Second, we hold that the preliminary injunction could not be avoided by a mere substitution of components. Although the injunction states that the kit contained "cylinder casings," no sensible person could argue that by substituting non-cylindrical casings the package could be shipped. Nor do we think glass jars could be substituted for the plastic bags containing the chemical powders to immunize the "kit," nor the use of explosive chemical substitutes in place of the particular chemicals listed.[5]

■ Third, we reject the Government's argument that the shipment of each separate component of the assembly-kit was enjoined. The preliminary injunction plainly refers to a package of components for constructing fireworks, and the colloquy between the District Court and defense counsel reinforces our belief that shipment of separate components were not covered. The purpose of the preliminary injunction was to keep away from children[6] firecrackers that might injure them and others. If a child could not use the shipment to make a firecracker, the shipment cannot be seen as violating the preliminary injunction.

Fourth, despite our holding that shipment of separate components would not violate the preliminary injunction, we hold that the injunction is not avoided by shipping all components for firecrackers except the fuse. For reasons that will become clearer when the particular facts are discussed below, the availability of fuse to children must have been well known to Christie. In addition, a reasonably curious child can devise substitutes for fuse, such as string or paper, in cases where he cannot obtain fuse. If Christie shipped all the ingredients for a firecracker except for the fuse, we believe that the preliminary injunction was violated.[7]

■■ Our fifth concern is whether the separate shipment of components in two or more packages would violate the preliminary injunction even though neither separate package would have been in violation. We think that it would, absent circumstances indicating that the violation was unintentional and that it occurred despite the use of reasonable care on the part of Christie. After the preliminary injunction was issued, Christie was under an obligation to take steps to insure that violations of the order would not occur. Unless

---

4. See Christie's arguments with respect to charges 1, 2, 6, and 7, infra.

5. See Christie's arguments with respect to charges 2, 3, and 7, infra.

6. Although the final order of the preliminary injunction makes no mention of children, it is clear from the proceedings

in this case that the intent of the order was limited to preventing shipments of fireworks supplies to children. The Government has not contended otherwise. See part II of this opinion, infra.

7. See Christie's arguments with respect to charges 3, 5, and 8, infra.

Christie could show that reasonable steps were taken, even inadvertent shipments of fireworks assembly-kits to children should be considered violations of the preliminary injunction.[8]

Sixth, we hold that a warning placed in Christie's catalog that purchasers must be of legal age and Christie's requirement that purchasers sign a statement on the order blank signifying their adulthood are not alone sufficient steps to insure compliance with the preliminary injunction. The likelihood that a child would order despite the warning in the catalog, and that he would sign the statement regardless of its truth, was clearly too great. A shipment by Christie to a child, even though Christie was not aware of the fact of childhood, cannot be immunized merely by Christie's receipt of the child's false statement and Christie's reliance on the catalog warning.[9]

On the final point, too, there is evidence that Christie was well aware that he was dealing with children despite his protestations of reliance upon the catalog warning and the signed statements. One element in Christie's promotion was an offer of a radio-controlled model airplane to be given away "absolutely free to one of our lucky customers." Customers ordering more than a minimum amount of supplies would be entitled to place their names in a "55 gallon tumbling barrel" from which the winner's name would be drawn. The same two-page brochure announced the prize for the next contest—"a custom-made, custom-painted and with the winner's name on it 'MINI-BIKE.'" This leaves little doubt that Christie was directing his appeal to children.

With these holdings in mind, we view the evidence on the eight separate charges in the Petition for Order to Show Cause:

*Charge 1: Promotion of Fireworks Assembly-Kits.* Paragraph 3 of the Government's Petition alleged that Christie had violated the preliminary injunction by promoting the sale of fireworks assembly-kits by (a) an Ecco Products catalog, and (b) various advertisements in *Popular Mechanics* magazine.

██ As to the advertisements, it is clear that they cannot be seen as promotion of the sale of fireworks assembly-kits. The advertisements that were used by Christie offered such materials as fuse and "pyrotechnic casings, stars, devices of all types."[10] There is no evidence that items shipped in response to these advertisements could be assembled into firecrackers. On this evidence alone the preliminary injunction was not violated.

But the advertisements were not used alone. Persons who responded to the advertisements were sent a catalog along with the samples they ordered, and thus the advertisements and catalogs rather clearly constituted a unified promotion scheme. The catalog itself contained prices for various pyrotechnic items such as powders, fuse, casings, and launchers. In addition, however, the catalog offered the "Skyrocket Kit," the "Volcano Kit," the "Combination Smoke-Stink Bomb Kit." None of the "kits" contained the precise components that the preliminary injunction had specified. Nevertheless, we believe that these "kits" were within the scope of the preliminary injunction.

---

8. See Christie's arguments with respect to charges 3 and 4.

9. See Christie's arguments with respect to all charges, but especially charges 1 and 4, *infra.*

10. Examples of the advertisements are these, which appeared in the October 1968 edition of Popular Mechanics, at p. 64:

"PYROTECHNIC Casings, stars, devices of all types. send 50¢ for samples. Ecco, Box 189, Northvale, New Jersey 07647."
"UNDERWATER Fuse 63 feet $1.00. Professional green fuse 45 feet $1.00. Christie, Box 85, Bergenfield, New Jersey 07621."

In addition, the catalog contained instructions for assembling firecrackers and cherry bombs. Those instructions, if read with any comprehension, would inform the reader precisely which items to select from the rest of the catalog. An enterprising youngster could easily put together the components of a fireworks assembly-kit for his order. We conclude that the catalog, read as a whole, promoted the sale of fireworks assembly-kits, and that the advertisements and catalogs, considered together, were a "promotion" of fireworks assembly-kits in violation of the preliminary injunction.

■ *Charge 2: Stanley R. Krom.* Stanley R. Krom, who was sixteen when he received the material, testified at trial that he responded to one of Christie's advertisements and received samples and order blanks; that he ordered supplies for making cherry bombs; that his order was mailed to him; that he used the supplies to make fireworks. Krom continued to order fireworks supplies from Christie, eventually using the supplies to construct a large explosive device which caused considerable havoc around the beach where Krom threw the device into the Pacific Ocean and exploded it. There can be no doubt that Krom had received a "fireworks assembly-kit."

Christie argues that the Government failed to show that the chemicals supplied to Krom were those listed in the preliminary injunction, and that the items were sold as a "kit" rather than separately. Because of our holdings that substitution of chemical and changes in merchandising terminology would not avoid the injunction, both arguments fail.

■ *Charge 3: Philip Dougherty.* Philip Dougherty ordered and received 100 casings from Christie in March 1968, according to his testimony at trial. He was fifteen at the time. About a week later he sent in a second order, and received end caps and two different bags of chemicals. Following instructions in the catalog which had been received with the second order, he used the materials to make firecrackers, which he exploded. There is no indication from the record where Dougherty obtained his fuse for the firecrackers, but he did not obtain it directly from Christie. Christie makes three arguments with respect to this charge. First, it is argued that the shipments were not in violation of the preliminary injunction since no fuse was sent. It is evident, however, that Dougherty obtained from Christie the ingredients that he needed for firecrackers. Dougherty's friends were also interested in fireworks, and he was able to obtain fuse that he needed. Second, it is argued that the components were shipped in response to two orders rather than one. But in view of the temporal proximity of the orders we believe that it was Christie's duty to prevent this kind of double order. And third, Christie argues that the chemicals were not shown to be those noted in the preliminary injunction. We reject that argument here as we did in response to the same argument with respect to Charge 2, *supra.*

■ *Charge 4: Eric Day.* Eric Day, who was thirteen at the time, answered a Christie advertisement and received the catalog, two casing samples, and some fuse. Using the catalog he ordered end caps, powder, and more casings. Day used the material to make firecrackers, one of which he used to blow up a school desk, the top of which went through a fourteen-foot ceiling. The police confiscated the remainder of Day's material. The argument that separate packages immunize this transaction is rejected. One further argument deserves attention, however. Although Eric Day submitted the order in his own name, his mother signed the "legal age" statement for him and wrote a check for the cost of the order. Christie argues that filling such an order does not violate the injunction since the order was from an adult rather than a child. We do not agree. The order form was submitted in the name of Eric Day and the

material was shipped to him. If Mrs. Day had submitted the order in her own name and the materials had been shipped to her and had been given by her to her son our decision might be different. *Cf.* United States v. Chalaire, 316 F.Supp. 543 (E.D.La.1970). But the preliminary injunction does not by its terms allow shipments to children who have parental consent, an since the shipment went to Eric Day it was clearly in violation of the injunction.

*Charge 5: Michael C. Lashutka and Floyd W. Mudge, Jr.* Floyd Mudge answered the Christie magazine advertisement and received fuses and an order blank in return. Since he was only thirteen years old, Mudge persuaded Michael Lashutka to send in an order for him. Lashutka, who was also thirteen, filled out the order form in his mother's name. The powder and casings ordered, along with a catalog, were received by Michael Lashutka even though the package was addressed to his mother. Lashutka turned the material over to Mudge. While Mudge was playing with the material some time later, he and two friends were severely burned when the material flared up. Defendant Christie does not argue that the shipment was not within the preliminary injunction because it was shipped to an adult; instead he argues that it was not covered because only the powder and casings were shipped to Lashutka, while the fuse was sent to Mudge. We agree that Christie could not reasonably be expected to know that the two boys would pool their fireworks components, but even if this point is conceded, the fact remains that powder and casings were sent to Lashutka in one package. The same situation existed in Charge 3, *supra*, and here, as there, we believe that the injunction was violated.

*Charge 6: Mark Tuftee.* Mark Tuftee, who was then sixteen, answered a Christie advertisement and received a catalog along with his sample. Tuftee then placed an order on the order blank sent to him, and received by return mail a box containing casings, powder, fuse, end caps, and instructions. Tuftee subsequently placed another order and received casings, end caps, powder, and fuse. He used the material to construct fireworks which he exploded.

With respect to Tuftee there can be no argument that he did not receive in a single package all the components of a fireworks assembly-kit. Christie's only argument is that Tuftee selected the components separately, and not as a "kit." For the reasons stated earlier, this argument cannot stand.

*Charge 7: Eric Swan and Paul Waters.* Eric Swan, who was thirteen at the time, responded to a Christie advertisement by sending fifty cents for samples. He received casings, fuse, end caps, and a catalog and order blank. Along with his friend Paul Waters, he ordered more casings, powder, fuse and end caps, which were sent to Waters. The two boys used the materials to construct firecrackers, which they exploded.

Christie argues that there was no proof that the chemical powders were those named in the preliminary injunction, and that the components were selected individually and not as a "kit." For reasons expressed above, both arguments are rejected.

*Charge 8: Brian Kardos.* Brian Kardos, thirteen at the time, responded to a Christie advertisement by ordering a catalog. From the catalog he ordered casings, end caps, powder, and fuse. He received everything he had ordered except for the fuse. This note accompanied the items he did receive:

"Brian
We are no longer able to send Fuse through the mail so I'm giving you a Credit Memo for 27′ Green Fuse at $1.00.

Ecco Products
Box 189
Northvale, N.J."

Kardos never was able to use the items sent to him, since they were confiscated immediately by his mother and by her turned over to the police. Chemical

analysis by the Food and Drug Administration revealed, however, that the powders were potassium nitrate and a mixture of aluminum powder and sulfur. Using the powders, the F.D.A. chemist constructed a firecracker which was exploded.

Christie argues that the preliminary injunction was not violated since no fuse was shipped. This same argument was rejected in Charges 3 and 5, *supra*. In both those charges, however, the recipients were able to obtain fuse to explode firecrackers made with the other items, whereas in the present instance the material was confiscated before any of it was used. For reasons expressed earlier, however, we think this makes no difference. We believe that it was apparent to Christie that a boy with all of the ingredients for a firecracker other than fuse would be able to obtain fuse, or some reasonable substitute therefor, in order to construct firecrackers. The preliminary injunction was violated here despite the fact that no fuse was mailed.

## II. THE CHARGE

Christie makes two basic arguments with respect to the District Court's instructions to the jury. The first, that there was no instruction that Christie could be found guilty only upon a showing that he had shipped or promoted a "kit" containing the five components named in the preliminary injunction, is rejected for reasons stated above in our consideration of the sufficiency of the evidence.

■■■ Christie's second contention is that the District Court "erroneously submitted the case to the jury as if the charges were for violations of the Child Protection Act of 1966, rather than for violation of the specific and limited proscription of the injunction." (Brief, p. 27).

We have read the charge, the jury's questions, and the District Court's responses thereto, and we believe that if error in this respect was committed it redounded to the benefit of Christie, and thus was harmless. Fed.R.Crim. P. 52(a); Grunewald v. United States, 353 U.S. 391, 396, 77 S.Ct. 963, 1 L.Ed.2d 931 n. 9 (1957); Blake v. United States, 323 F.2d 245 (8th Cir. 1963); United States v. Stromberg, 268 F.2d 256, 266 (2d Cir.), cert. denied, 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959); Stevens v. United States, 206 F.2d 64, 66 (6th Cir. 1953).

For example, Christie argues that it was error for the District Court to charge that it was Christie's duty to "make certain that the materials were not shipped to children," because "the injunction was not dependent upon the age of the recipient." (Brief, p. 28). It is true that by its terms the preliminary injunction is not limited to children, but by thus limiting it in his charge the District Court erred, if at all, in favor of Christie.

The jury apparently noticed the discrepancy between the charge and the terms of the preliminary injunction, and returned with this question:

"In reference to the order 'exhibit A,' is it the intent of the order that the defendant be restrained from shipping to anyone interstate or just be held from shipping to children interstate.

"Should we confine our decisions to the last paragraph of the order or to the entire order which makes reference to the Child Protection Act of 1966."

The District Court answered the questions in a way that limited the preliminary injunction to children, and the jury exhibited no confusion thereafter. The error, if any, was in Christie's favor, and there is no evidence to warrant Christie's allegation that the jury was so confused that it "had completely lost sight of the fundamental issue of whether Christie had violated the terms of the injunction." (Brief, p. 31).

■■■ One further point made by Christie requires an answer. Christie argues that in its instructions to the jury and at other times during the trial

the District Court erroneously removed from the jury's consideration the question of whether the fireworks supplies were a "toy, or other article intended for use by children" within the meaning of 15 U.S.C. § 1261(q) (1). The Court's actions on this matter were correct.

When a person is charged with criminal contempt for failing to obey a court order, the validity of the court order is not a matter for consideration in the criminal trial. United States v. United Mine Workers, 330 U.S. 258, 293–4, 67 S.Ct. 677, 91 L.Ed. 884 (1947); Ford v. Kammerer, 450 F.2d 279 (3d Cir. 1971); Cliett v. Hammonds, 305 F.2d 565, 570 (5th Cir. 1962). A party's disagreement with an order is a matter to be litigated by appeal.

Whether Christie's fireworks supplies were within the scope of the Child Protection Act was considered in the civil action as a part of which the preliminary injunction was entered. That question was decided adversely to Christie. Whether that decision was correct was not a question to be considered in Christie's trial for criminal contempt, and the District Court was correct in so holding.

## III. SEVERITY OF THE SENTENCE

After the jury returned verdicts of guilty on each of the eight separate charges, the District Court sentenced Christie to imprisonment for one year. Christie contends that the sentence was excessive.

We reject Christie's contention that a one-year sentence is necessarily excessive where violations of an injunction are flagrant and defenses raised to the charges are merely technical. See Yates v. United States, 356 U.S. 363, 78 S.Ct. 766, 2 L.Ed.2d 837 (1958). Our review of the District Court's comments at the time of sentencing indicates, however, that in imposing the sentence the Court took into account the fact that Christie had been convicted once before for violating the same preliminary injunction. As we noted ear-

lier, the first conviction was overturned by this court after the sentence now under attack had been imposed. Under the circumstances we think it appropriate to vacate the one-year sentence and remand the case to the District Court for resentencing.

The judgment will be vacated and the cause remanded for further proceedings in accordance with this opinion.