UNITED STATES of America,
Plaintiff-Appellee,

v.

Patrick Jude DeJEAN,
Defendant-Appellant.

No. 79–5413
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 20, 1980.

* Fed.R.App.P. 34(a);  5th Cir. R. 18.

**1357**

Virginia Laughlin Schlueter, Asst. Public Defender, New Orleans, La., for defendant-appellant.

John P. Volz, U. S. Atty., Pauline F. Hardin, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before GODBOLD, REAVLEY and ANDERSON, Circuit Judges.

PER CURIAM:

■ Appellant Patrick Jude DeJean was convicted by a jury on June 5, 1979, of one count of violation of the Hobbs Act, 18 U.S.C. § 1951 (1976) which makes it a crime to interfere with interstate commerce by extortion. DeJean raises two issues on appeal: (1) whether the evidence presented by the government was sufficient for conviction;[1] and (2) whether the prosecutor's alleged indirect comments on DeJean's failure to testify at trial constituted reversible error. We have considered both appellant's contentions and for the reasons below affirm his conviction.

THE CRIME

While she was at work on Thursday, March 8, 1979, Ms. Mary Helen Worth, a teller at the Continental Bank in Harvey, Louisiana, received a phone call at approximately 1:45 P.M. from an unknown man. The caller asked Ms. Worth if she had a daughter named Stephanie and when she replied, "yes", he asked if Stephanie was wearing a red jacket. Ms. Worth responded "yes" and the caller asked whether Stephanie had a turtle and when Ms. Worth replied that she did, the man told Ms. Worth that Stephanie had been kidnapped, and that he had her. He then said "You are being watched, and our men will come up to your window, say 'good morning, Missy, can I have change for a dollar?' You are to give him $100,000."

Through contact with Stephanie's school shortly after the call, it was learned that the nine-year old girl had not in fact been kidnapped. In addition, no one ever came to Ms. Worth to obtain the money.

THE GOVERNMENT'S EVIDENCE

During the course of the trial, the government sought to prove DeJean's guilt on the basis of circumstantial evidence. The government showed that DeJean, at that time a school bus driver for the Jefferson Parish School Board, was Stephanie's regular school bus driver and that on the morning of March 8, 1979, he had transported Stephanie to school. The evidence showed further that Stephanie was wearing a red jacket on that morning and that she was carrying a turtle concealed in a plastic container. The government showed that DeJean knew what was in the container because another child, Norman Troy Dupre, on DeJean's request, had asked Stephanie what was in the container, she had told Norman, and he had so informed DeJean. There was additional evidence that no other adult except Stephanie's mother and her teacher knew that the turtle was in the plastic container.

The government established through the testimony of Norman Dupre that DeJean

1. Appellant's attorney moved under Rule 29 Fed.R.Crim.P. for judgment of acquittal at the close of the government's case on the ground of insufficiency of the evidence. He renewed his motion at the close of all the evidence. Appellant has thus properly presented this issue for appeal.

had asked the children on the bus where their parents worked and that Stephanie had said her mother worked at the Continental Bank. Stephanie testified that De-Jean had asked "Whose mother works at a bank?" When she raised her hand and said her mother did, he said "What bank does she work at?" Stephanie testified that she replied "The Continental Bank," and DeJean asked "What does she do?" Stephanie had replied "She gives out the money." DeJean said "A teller?" and Stephanie said "Yes."

Bank teller Gilmore testified for the government that she saw DeJean at the Continental Bank between 10:30 and 11:00 on the morning of March 8, 1979, and that she gave him change for a one hundred dollar bill. Michael Bush, a vice-president of the Continental Bank and a personal acquaintance of DeJean, testified as well that he saw DeJean in the Continental Bank on the morning of March 8. Mr. Bush testified further that DeJean did not have an account at the Continental Bank.

An important part of the government's case was the testimony of Michael Guillot, another acquaintance of DeJean's. Guillot testified that he saw DeJean at the entry area of the Continental Bank, but he was unable to identify the day in March, 1979, when he saw DeJean. In response to the government's question asking him when he saw DeJean at the bank, Guillot responded, "It was within a couple of days of that time that you are talking about, it was in that— around that period of time." Guillot did not identify the time of day when he saw DeJean but he testified that just after he saw DeJean at the entrance of the bank, "I saw something was going on and, you know, it was unusual." He testified further, "The only thing I heard when I went into the bank, when I was making my deposit, a teller seemed upset and she said that _ _" At this point in Guillot's testimony, the defense counsel objected and the court sustained an objection to any testimony about what the teller said. The court

did permit Guillot to testify to what he saw going on in the bank just after he saw DeJean; he said that he saw a girl (i. e., teller) that was upset and that she was in tears.

In summary, the government based its case against DeJean on the following evidence: (1) the fact that DeJean had the opportunity to know what Stephanie was wearing on Thursday, March 8, 1979; (2) the fact that DeJean knew Stephanie's name and her mother's name; (3) the fact that DeJean had asked Stephanie about her mother's occupation and had learned that she worked at a bank; (4) the fact that DeJean knew Stephanie had a turtle with her on March 8, 1979, and the evidence that no other adult except Stephanie's mother and her teacher knew she had the turtle; (5) the fact that DeJean was at the Continental Bank, where he did not have an account, between 10:30 and 11:00 A.M. March 8, 1979; and (6) Guillot's testimony implying that DeJean was at the Continental Bank at 1:45 P.M., the time of the extortion call, on March 8, 1979.

### THE LEGAL STANDARD

In reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the government. *Glasser v. U. S.*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *U. S. v. Lonsdale*, 577 F.2d 923 (5th Cir. 1978). All reasonable inferences and credibility choices must be made in support of the jury verdict. *U. S. v. Wieschenberg*, 604 F.2d 326 (5th Cir. 1979). We must determine whether jurors could reasonably conclude that the evidence is inconsistent with every reasonable hypothesis of innocence. *U. S. v. Wieschenberg, supra; U. S. v. Sink*, 586 F.2d 1041 (5th Cir. 1978), *cert. denied*, 443 U.S. 912, 99 S.Ct. 3102, 61 L.Ed.2d 876; *U. S. v. Fredericks*, 586 F.2d 470 (5th Cir. 1978), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1507, 59 L.Ed.2d 776 (1979); *U. S. v. Lonsdale, supra*. Stated another way, the test is whether a reasonably minded jury *must* have had

a reasonable doubt. *U. S. v. Barrera*, 547 F.2d 1250 (5th Cir. 1977). The test for review of the sufficiency of circumstantial evidence is the same as that for review of direct evidence. *U. S. v. Barrera, supra.*

## SUFFICIENCY OF THE EVIDENCE SUPPORTING DeJEAN'S CONVICTION

The government's case against DeJean was circumstantial. DeJean knew Stephanie's name, the name of her mother, what Stephanie was wearing the day of the crime, and he had questioned Stephanie about her mother's occupation and thereby learned that she was a bank teller. These are facts that can clearly be viewed as consistent with a reasonable hypothesis of innocence. The fact that DeJean was present at the bank on the morning of the crime, although he did not have an account at the bank, is equally susceptible to innocent interpretation.

More damaging to DeJean is Guillot's testimony which, the government argued, established that DeJean was present at the Continental Bank at the time the extortion call was made. Consistent with the standard of review, above stated, we assume all reasonable inferences in support of the jury verdict. Therefore, one issue before the Court is whether the inference that DeJean was at the bank at the crucial time was reasonable. In other words, could the jury reasonably infer from Guillot's testimony that DeJean was present at the bank at the time of the call?

We conclude, after careful review of Guillot's testimony, that the jury could reasonably infer that DeJean was present at the bank at the time of the extortion call. The jury heard Guillot testify that when he entered the bank, just after seeing DeJean, he saw a teller who was upset and in tears. Ms. Worth had testified earlier that after she received the extortion call she was close to being in shock and she was in tears. It is reasonable to infer that a teller in tears is an occurrence sufficiently rare that it would have happened only once during the several days when Guillot could have been in the bank. We think the jury could reasonably infer from this testimony that Guillot saw DeJean in the bank just after the extortion call was made.

Most damaging of all the government's evidence against DeJean is that evidence showing that DeJean was aware that Stephanie carried a turtle with her on the day of the crime and that no other adult except Stephanie's mother and her teacher knew about the turtle. Even this evidence, however, does not exclude every reasonable hypothesis of innocence. For example, someone to whom one of the children relayed the turtle story might have made the call.

■ The ultimate question is whether, considering all the evidence, the jury must necessarily have entertained a reasonable doubt. Although this is a difficult and close case, we conclude that the jury was not unreasonable in finding that there was no reasonable doubt but that DeJean was the only one other than Stephanie's mother and teacher who knew about the turtle and that he made the call.

## ALLEGEDLY IMPROPER PROSECUTORIAL COMMENT

DeJean's second allegation on appeal is that the government's closing argument contained an indirect but improper comment on his failure to testify at trial. The portion of the Assistant United States Attorney's closing argument that DeJean objects to reads as follows:

"You know that Mr. DeJean, having no business at that bank, went into that bank around 11:00 to 11:30 the day all this occurred. What did he do? He wanted to change a $100 bill, according to Mr. Bush, so that he could pay his driver. They were making delivery at the bank building, but ladies and gentlemen, if they are making a delivery at the bank building and he needs some sort of

change to pay his driver, don't you think that they would have the driver here to testify? Don't you think they would have the person to whom these things were delivered here to testify to say 'oh yeah, he was in that bank building coming to see me to deliver something to me?' Don't you think they would have them here to say 'he paid me with the change he got from that bank?' Don't you think they would be here? They are not because they don't exist."

■ When, as in this case, the defendant's counsel fails to object to the prosecutor's comment, the standard for review of an allegedly improper comment by the prosecution on the accused's failure to testify is whether plain error affecting substantial rights has been committed. Fed.R.Crim.P. 52(b). *United States v. Miranda*, 593 F.2d 590 (5th Cir. 1979). In *Miranda*, the Court said, "[a]n objection is required because a prompt objection by counsel will allow the trial court to take appropriate action to cure the error, usually by giving limiting instructions to the jury. (citations omitted). Accordingly, we may reverse the conviction only if the prosecutor's indiscretions seriously affected the substantial rights of the accused." At 594.

In *U. S. v. Rochan*, 563 F.2d 1246 (5th Cir. 1977), a panel of this Court employed this Circuit's standard for reviewing an allegation of improper prosecutorial comment on an accused's failure to testify. "To reverse for improper comment by the prosecutor, we must find one of two things: that 'the prosecutor's manifest intention was to comment upon the accused's failure to testify' or that the remark was 'of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' *U. S. v. Ward*, 552 F.2d 1080, 1083 (5th Cir. 1977) quoting *Samuels v. U. S.*, 398 F.2d 964, 968 (5th Cir. 1968) . . . "

Elaborating on the manifest intention prong of the test, the Court stated, "We cannot find that the prosecutor manifestly intended to comment on the defendant's failure to testify, if some other explanation for his remark is equally plausible." At

1249. Examples of such other plausible explanations are apparently inadvertent statements by the prosecutor and statements that were " 'more likely' intended for a proper purpose . . . than to comment on the defendant's failure to take the stand." *U. S. v. Chandler*, 586 F.2d 593, 604 (5th Cir. 1978), *cert. denied*, 440 U.S. 927, 99 S.Ct. 1262, 59 L.Ed.2d 483 (1979).

■ In this case, while the prosecutor's remarks objected to by DeJean point out that he has failed to rebut a portion of the government's case, we cannot agree that her comments constitute a comment on De-Jean's failure to testify. Her comments demonstrate that an alleged driver was not called by the defense to testify, but they do not even draw attention to the fact that DeJean did not testify. Thus, we cannot say that the prosecutor's manifest intention in making these remarks was to comment upon DeJean's failure to testify nor that the jury would naturally and necessarily take her statements to be a comment on DeJean's failure to testify. The comment simply does not raise the issue of DeJean's failing to testify at all. We conclude, therefore, that there was not improper prosecutorial comment on DeJean's failure to testify.

The judgment of the District Court is, accordingly, AFFIRMED.