919 F.2d 139
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaitiff-Appellee,
v.
David R. FULLER, Defendant-Appellant.
 No. 90-5768.
 United States Court of Appeals, Fourth Circuit.
 Submitted Sept. 4, 1990.
Decided Dec. 4, 1990.
 
 Appeal from the United States District Court for the Western District of Virginia, at Abingdon. Glen M. Williams, Senior District Judge. (CR-89-62-1)
 Scott Wayne Mullins, Coeburn, Va., for appellant.
 John Perry Alderman, United States Attorney, Jerry Walter Kilgore, Assistant United States Attorney, Abingdon, Va., for appellee.
 W.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and WILKINS and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Fuller appeals the district court's order of February 7, 1990, sentencing him to 10 days' incarceration, pursuant to 18 U.S.C. Sec. 401(3), for willfully disobeying an injunction issued by the district court. We affirm.
 
 BACKGROUND
 
 2
 In April 1989, the International Union, United Mine Workers of America ("Union") called a general strike against Clinchfield Coal Company and the other Pittston coal Group subsidiary companies. At the request of the National Labor Relations Board, pursuant to Section 10(j) of the National Labor Relations Act, as amended, Senior United States District Judge Glen Williams, Western District of Virginia at Abingdon, entered a temporary restraining order ("TRO") on May 14, 1989. This order prohibited the Union, all members and "persons acting in concert or participation with them" from mass picketing, inflicting property damage, and obstructing, hindering or preventing company employees or other persons doing business with the company from entering or leaving the Clinchfield Coal Company sites. The judge also ordered the Union to give all persons subject to the order instructions and directions on compliance. The TRO expired by its own terms on June 1, 1989.
 
 
 3
 On June 7, 1989, acting on a petition by the National Labor Relations Board ("NLRB"),[1] Judge Williams entered a temporary injunction featuring the same prohibitions as the TRO of May 24. The language was identical to that of the TRO, except that the injunction did not mention Clinchfield Coal Company by name, referring instead to the "Charging Party." The injunction required the Union to distribute copies of the order to its members and "all persons acting in concert with them," to post the order at all meeting halls in specified counties, and to file a sworn affidavit describing specific steps taken to assure compliance with the injunction.
 
 
 4
 The Union submitted the affidavit of Union Representative John L. Cox on June 16, 1989. In the affidavit Cox swore that the June 7, 1989, order had been posted at all picket sites and union halls in Wise, Dickenson and Russell Counties, Virginia, and that three hundred copies of the order had been distributed to various picket line locations including McClure Mine, where Fuller was seen.
 
 
 5
 On December 5, 1989, United States Marshals arrested David R. Fuller for violating the district court's order by allegedly cutting a tire and assaulting a member of the security personnel working for Clinchfield Coal Company. Fuller entered a motion to dismiss on the ground that the injunction was unconstitutionally vague, and alternatively requested a jury trial. The district court denied both motions.
 
 
 6
 A bench trial was held on February 7, 1990, before Judge Williams. The United States presented testimony that Fuller had been seen on the picket line throughout the strike, wearing camouflage clothing of the type worn by striking miners. Two witnesses testified that on December 5, 1989, they had seen Fuller stabbing the tire of an escort truck belonging to the Clinchfield Coal Company. The United States also submitted a photograph, taken by a witness, of Fuller stabbing the tire. Fuller offered no evidence. Judge Williams found Fuller guilty of criminal contempt for violating the June 7, 1989, injunction, and sentenced him to 10 days' incarceration. On appeal, Fuller argues that: (1) he was entitled to a jury trial; (2) the injunction was unconstitutionally vague; and (3) the government did not establish contempt beyond a reasonable doubt.
 
 
 7
 * Fuller claimed that the district court erred in denying his motion asserting that he was entitled to a jury trial under the combined provenance of Federal Rule of Criminal Procedure 42(b)[2] and 18 U.S.C. Sec. 3692.[3] The Supreme Court, however, has specifically concluded that Section 3692 does not provide for a jury trial in contempt proceedings brought to enforce an injunction issued at the behest of the National Labor Relations Board in a labor dispute arising under the amended National Labor Relations Act, 29 U.S.C. Secs. 141 et seq. Muniz v. Hoffman, 422 U.S. 454 (1975). In Muniz, the Court reaffirmed the historic rule that minor crimes such as "petty" contempts may be tried without a jury notwithstanding the provisions of article III, section 2 and the sixth amendment.[4] Id. at 475-76; accord United States v. Troxler Hosiery Co., 681 F.2d 934, 935-36 (4th Cir.1982); Richmond Black Police Officer's Ass'n v. City of Richmond, 548 F.2d 123, 127 (4th Cir.1977). Criminal offenses punished by imprisonment of up to six months plus normal periods of probation are deemed to be minor. Muniz, 422 U.S. at 476; In re Scott, 605 F.2d 736, 738 (4th Cir.1979). In this case, Fuller was sentenced to ten days in jail. Thus, under Muniz and its progeny, Fuller was not entitled to a trial by jury.[5]
 
 II
 
 8
 Fuller moved to dismiss the government's complaint, on the grounds that the June 7, 1989, injunction issued by Judge Williams was unconstitutionally vague and thus not enforceable through the criminal contempt powers of the court. This Court has stated that for a defendant to be convicted of criminal contempt for violation of a court order, the order must have been "definite, clear, specific, and [must have] left no doubt or uncertainty in the minds of those to whom it was addressed." Richmond Black Police Officers Ass'n, supra, 548 F.2d at 129. Because the June 7 injunction purported to protect the "Charging Party" and did not identify this Charging Party as either the Clinchfield Coal Company or the Pittston Coal Group or any of its subsidiaries, Fuller claims that the injunction failed to meet the standard of clarity set forth in Richmond Black Police Officers. This argument is without merit.
 
 
 9
 In International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, Local 1291, the Supreme Court stated:
 
 
 10
 The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid.
 
 
 11
 389 U.S. 64, 76 (1967), quoted in NLRB v. Heck's, Inc., 388 F.2d 668, 670 (4th Cir.1967). The Court was referring to Federal Rule of Civil Procedure 65(d), which provides that every court order granting an injunction "shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained...." The Court also has noted that the specificity requirements of Rule 65(d) serve two essential functions: (1) they prevent uncertainty and confusion on the part of those faced with injunctive orders, thereby avoiding the imposition of sanctions for violations of decrees too vague to be understood; and (2) they facilitate informed and intelligent appellate review. Schmidt v. Lessard, 414 U.S. 473, 476-77 (1974).
 
 
 12
 Nevertheless, where it gives fair warning of the acts that it forbids, an injunction may not be avoided on merely technical grounds. Moreover, the language of an injunction must be read in the light of the circumstances surrounding its entry. United States v. Christie, 465 F.2d 1002, 1007 (3d Cir.1972). In the present case, there is very little doubt that all parties familiar with the strike, including the Union, the striking coal miners, and their collaborators, were not only aware of the existence of the temporary injunction but also of the fact that the temporary injunction, like the TRO which preceded it, was intended specifically for the protection of Clinchfield. The June 7 injunction is specific concerning the types of activity enjoined, and it specifically refers to job sites in Wise, Russell and Dickenson Counties. Fuller was arrested on the picket line in Dickenson County, where he had been observed by officers on numerous previous occasions. The prior order of May 24, 1989 designated Clinchfield Coal Company throughout the order as the object of protection. The order granting the injunction, when read in its entirety and in light of the events taking place in the Western District of Virginia at that time, could only refer to the Union's strike against Pittston and Clinchfield.
 
 
 13
 Under these circumstances, credibility would be strained to accept the proposition that Fuller was not chargeable with knowing that it was Clinchfield the strikers were enjoined against harassing. See United States v. McAndrew, 480 F.Supp. 1189, 1193 (E.D.Va.1979), citing Pettibone v. United States, 148 U.S. 197, 206-07 (1893). To accept Fuller's argument would be to elevate flawless draftsmanship of court orders over the substantive concerns underlying Rule 65(d). Such perfection is not required, however, when the twin dangers of uncertainty and uninformed review are absent, as they are in this case.
 
 III
 
 14
 Fuller's final point of error is that the government failed to establish criminal contempt beyond a reasonable doubt. In particular, Fuller claims that the district court erroneously admitted the affidavit of John L. Cox as evidence that Fuller had notice of the district court's injunction, and that without this affidavit there was insufficient evidence to support the finding that Fuller willfully and knowingly violated the injunction.
 
 
 15
 Fuller contends that the affidavit was hearsay and not admissible pursuant to Rule 801 of the Federal Rules of Evidence because no showing was made that the affiant was Fuller's representative or that he was authorized to speak for Fuller. Rule 801(d)(2) provides that a statement is not hearsay if that statement is made by the party's agent. Judge Williams found that sufficient evidence existed to support the conclusion that Cox, in his capacity as Union representative, was acting as the agent of Fuller, a Union member. We cannot say that, in considering the evidence of agency before him, Judge Williams abused his discretion in admitting the affidavit.
 
 
 16
 Willfulness for criminal contempt may be inferred from the facts and circumstances in proof. United States v. Greyhound Corp., 508 F.2d 529, 532 (7th Cir.1974). In a contempt case involving court orders "the court should consider the entire background behind the order--including the conduct that the order was meant to enjoin or secure, the interests that it was trying to protect, the manner in which it was trying to protect them, and any past violations and warnings-- ... in determining whether the defendant knew or should have known that his conduct was wrongful." Id., citing Terminal Railroad Assoc. v. United States, 266 U.S. 17 (1924).
 
 
 17
 The district court was required to review the evidence in the light most favorable to the government. United States v. DeJean, 613 F.2d 1356, 1358 (5th Cir.), cert. denied, 446 U.S. 945 (1980). The Cox affidavit, together with the evidence in the record offered by the government to show that Fuller did commit acts in violation of the injunction, fully supports the district court's determination of contempt beyond a reasonable doubt. Accordingly, the judgment of the district court is
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The petition for an injunction was filed by the NLRB and entertained by the district court pursuant to 29 U.S.C. Sec. 160(1)
 
 
 [2]
 That rule provides, in relevant part: "The defendant is entitled to a trial by jury in any case in which an act of Congress so provides."
 
 
 [3]
 That section provides, in relevant part: "In all cases of contempt arising under the laws of the United States governing the issuance of injunctions or restraining orders in any case involving or growing out of a labor dispute, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the contempt shall have been committed."
 
 
 [4]
 In the labor context, at the time of enactment of the Wagner and Taft-Hartley Acts the historic rule operated to exempt from jury trial either civil or criminal contempt charges arising from violations of injunctions authorized by those statutes. Muniz, 422 U.S. at 462. Section 11 of the Norris-LaGuardia Act, 29 U.S.C. Sec. 111 (repealed 1948), required jury trials in contempt actions arising out of labor disputes. Section 11, however, was limited by its own terms and by judicial decision to cases "arising under" the Norris-LaGuardia Act, and thus functioned as a limited exception to the traditional rule. Id. at 463, citing United States v. Mine Workers, 330 U.S. 258, 298 (1947). The Court in Muniz reasoned that Section 3692 applies to injunctions issued under the Norris-LaGuardia Act, and not to injunctions issued under the National Labor Relations Act. Id. at 463-64
 
 
 [5]
 Fuller cites National Maritime Union v. Aquaslide 'N' Dive Corp., 737 F.2d 1395 (5th Cir.1984), in support of the proposition that Section 3692 governs the right to a jury trial in this case. National Maritime, however, does not come under Muniz because the injunction in National Maritime was not issued at the behest of the National Labor Relations Board pursuant to the National Labor Relations Act. The National Maritime court holds only that Section 3692, where applicable, guarantees the right to a jury trial. 737 F.2d at 1402