**UNITED STATES of America**

v.

**Linda HODGE, Defendant.**

**No. 94 Cr. 1020 (AGS).**

United States District Court, S.D. New York.

June 29, 1995.

John T. McCormick, U.S. Dept. of Justice, New York City, for plaintiff.

Lawrence D. Gerzog, Law Offices of Lawrence D. Gerzog, New York City, for defendant.

*Opinion and Order*

SCHWARTZ, District Judge:

Currently pending before this Court is the motion of defendant Linda Hodge to dismiss the Indictment. For the reasons set forth below, the motion is denied.

## BACKGROUND

On December 22, 1995, a grand jury sitting in the Southern District of New York returned a one-count Indictment against the defendant which charged her with criminal contempt in violation of Title 18, United States Code, Section 401. (A copy of the Indictment is attached hereto as Exhibit A). The Indictment charges that on or about August 10, 1993, the Securities and Exchange Commission ("SEC") commenced a civil injunctive action to restrain a fraudulent offering of $2 million of the securities of Air Tech Industries, Inc. ("Air Tech"). This action was brought against Air Tech and its president, Gary L. DiGirolamo ("DiGirolamo"), and against Hercules Capital, Inc. ("Hercules"), the brokerage firm that offered and sold Air Tech securities to the public, and Craig Medoff ("Medoff"), Hercules' president. (Indictment at 1).

On or about August 10, 1993, the United States District Court for the Southern District of New York issued an Order (the "Freeze Order") which, among other things, directed that Medoff, DiGirolamo, Hercules, Air Tech, and their employees, servants, officers, and agents hold and retain within their control, and otherwise prevent any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment, and other disposal of the assets, funds, and properties of Air Tech and DiGirolamo. (Indictment at 1; Freeze Order, Exhibit B to the Government's Memorandum of Law, "Gov't Mem."). On that same date, Air Tech and DiGirolamo consented to the entry of a final judgment which continued the Freeze Order pending the District Court's determination of the SEC's claims against Air Tech and DiGirolamo. (Indictment at 2; Final Judgment, Exhibit C to Gov't Mem.).

As the Indictment alleges, the defendant was an accountant retained by Air Tech and DiGirolamo to audit Air Tech's financial statements included in Air Tech's stock offering materials disseminated to the public, and to act as the custodian for the funds which investors paid to subscribe to the offering. (Indictment at 2; see also the SEC deposition of Linda Hodge, dated August 17, 1993, Exhibit D to Gov't Mem., at 22). Hodge deposited these funds into her Client Funds Account at Chemical Bank in New York City (the "Client Funds Account").[1] (Indictment at 2). This Client Funds Account consisted of a primary account and several subaccounts, one of which was designated the "Air Tech" subaccount. Although a deposit could be made directly into either the primary account or the Air Tech subaccount, funds could only be withdrawn directly from the primary account. Funds from the Air Tech subaccount, therefore, had to be transferred first into the primary account before they could be withdrawn. (*See* SEC deposition of Linda Hodge, dated March 17, 1993, Exhibit F to Gov't Mem., at 83, 86, and 89–90).

On or about August 12, 1993, the SEC served a copy of the Freeze Order upon the defendant. (Indictment at 2; certification of service, Exhibit G to Gov't Mem.). The Indictment alleges that the defendant withdrew approximately $13,000 of the Air Tech investors' funds from her Client Funds Account while the Freeze Order was still in effect. (Indictment at 2).

The defendant now moves to dismiss the Indictment on the ground that the District Court's August 10, 1993 Order was vague, unclear, ambiguous, and insufficiently specific. For the reasons set forth below, the motion is denied.

## *DISCUSSION*

▆ In the recent decision *United States v. Bruce Cutler*, 58 F.3d 825, 834 (2d Cir. June 19, 1995), the Court of Appeals for the Second Circuit reiterated the standard that the Government must meet in order to obtain a conviction for criminal contempt.

---

1. The account records of the defendant's Client Funds Account, along with a chart summarizing the movement of the funds within the account, appear as Exhibit E to the Gov't Mem.

To hold a person in criminal contempt, the government must prove beyond a reasonable doubt that: (1) the court entered a reasonably specific order; (2) defendant knew of that order; (3) defendant violated that order; and (4) his violation was willful. *See* 1 Leonard B. Sand et al., *Modern Federal Jury Instructions: Criminal,* ¶ 20.02, at 20–26.1 (1994); *see also Rojas v. United States,* 55 F.3d 61, 63 (2d Cir.1995) (per curiam) (federal court may punish, by fine or imprisonment, a person who " 'willfully violate[s] the specific and definite terms of a court order' ") (quoting *United States v. Twentieth Century Fox Film Corp.,* 882 F.2d 656, 659 (2d Cir.1989), *cert. denied,* 493 U.S. 1021, 110 S.Ct. 722, 107 L.Ed.2d 741 (1990)).

Accordingly, the defendant is correct in her contention that "[n]o one may be held in contempt for violating a court order unless the order is clear and specific and leaves no uncertainty in the minds of those to whom it is addressed." *Hess v. New Jersey Transit Rail Operations, Inc.,* 846 F.2d 114, 116 (2d Cir.1988) (citing *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967)); *see also, United States v. Charmer Indus., Inc.,* 722 F.2d 1073, 1079 (2d Cir.1983) (a defendant cannot be held in contempt absent a "definite and specific" order of which he had notice). This does not mean, however, that where an injunction gives fair warning of the act that it forbids, it can be avoided on merely technical grounds. *United States v. Christie Industries, Inc.,* 465 F.2d 1002, 1007 (3d Cir.1972). Indeed, in a criminal contempt case involving a court order,

> the court should consider the entire background behind the order—including the conduct that the order was meant to enjoin or secure, the interests that it was trying to protect, the manner in which it was trying to protect them, and any past viola-

tions and warnings—in determining whether the order is sufficiently specific and in determining whether the defendant knew or should have known that his conduct was wrongful.

*United States v. Greyhound Corporation,* 508 F.2d 529, 532 (7th Cir.1974). Furthermore, "the defendant may not avoid criminal contempt by 'twisted interpretations' or 'tortured constructions' of the provisions of the order." *Id.*

■ Under the foregoing standards, we are constrained to deny defendant's motion. The defendant first claims that the Freeze Order does not adequately specify to whom it applies, arguing that "[i]t is unclear whether the words 'them' and 'their' refer to the defendants, in which case it would not apply to Ms. Hodge, or to the defendant's agents, in which case it could at least arguably apply to her." (Hodge Br. 4–5). Close examination of the Freeze Order, however, shows that its language and applicability are clear. The Freeze Order states that it applies to "Defendant Medoff, Defendant DiGirolamo, Defendant Hercules, Defendant Air Tech, *and* each of them, *and* each's employees, servants, agents, officers, *and* attorneys-in-fact, *and* those persons in active concert or participation with them who receive actual notice of this Order by personal service...." (Freeze Order at 9) (emphasis added). The Freeze Order is drafted in the conjunctive, and precisely tracks the language of Fed. R.Civ.P. 65(d), which governs the form and scope of injunctions and restraining orders.[2]

The Indictment clearly alleges that defendant was retained by Air Tech and DiGirolamo to audit Air Tech's financial statements and to act as custodian for the funds which investors paid to subscribe to the Air Tech offering. (Indictment at 2; see also Exhibit D at 22–23). As an accountant hired by Air Tech, it cannot be disputed that the defendant was an "employee, servant, agent ... and person in active concert or participation

---

2. Fed.R.Civ.P. 65(d) provides that:
   Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; *and is*

*binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.* (emphasis added).

with [the defendants] who receive[d] actual notice of [the] Order", and as such, fell within the ambit of the Freeze Order.

The SEC personally served defendant with a copy of the Freeze Order, further undermining any suggestion that defendant failed to receive adequate notice. *United States v. Greyhound Corporation*, 508 F.2d at 532 ("The very issuance of the order puts the party on notice that his past acts have been wrongful.") The defendant admitted, moreover, during her SEC deposition that she knew she was the custodian of the investor's funds (SEC deposition at 23, 31–32), that these funds had been frozen (SEC deposition excerpts at 159), and that she had no understanding that the freeze had ever been lifted. (*Id.* at 159–60).[3] The defendant's own statements thus preclude a finding that the applicability of the Freeze Order was vague and uncertain.

■ Second, the defendant argues that the Freeze Order only applied to those funds held in the Air Tech subaccount on the date of the Order. More precisely, because only $104.21 was present in the subaccount on August 10, 1993, the defendant suggests that she was only responsible for maintaining that amount of money under the Freeze Order. The defendant further alleges that the Indictment unfairly charges her with improperly withdrawing funds which were in fact placed into the subaccount well after the date the Order was signed. (Hodge Br. 5).

It is our view that the defendant misreads the language of the Freeze Order.[4] The Freeze Order refers not just to funds held in the subaccount, but to *all* "assets, funds, or other properties" of the defendants. Although the subaccount only contained $104.21 on the date of the Order, there were additional funds in the defendant's primary account. (Client Funds Account documents attached as Exhibit E to Gov't Mem.). In addition, other Air Tech assets were transferred into the defendant's primary and sub-accounts after the issuance of the Freeze Order. *Id.* These funds were also governed by the Freeze Order inasmuch as they were assets of Air Tech which came under the control of the defendant. As the Indictment alleges, the defendant misappropriated approximately $13,000 from her primary and sub-accounts after she had been notified of the freeze. (Indictment at 2–3).

■ Third, the defendant argues that since the Freeze Order only provided that " 'up to $284,000' [was] subject to the 'freeze' ", she had no way to "know whether the assets in . . . her control [were] part of that aggregate amount or in excess of the amount, and therefore not covered." (Hodge Br. 6). This argument relies upon a highly technical, tortured—and ultimately unpersuasive—interpretation of the language of the Freeze Order. *See, e.g., United States v. Greyhound Corporation*, 508 F.2d at 532 ("To provide a defense to criminal contempt, the mistaken construction must be one which was adopted in good faith and which, given the background and purpose of the order, is plausible. The defendant may not avoid criminal contempt by 'twisted interpretations' or 'tortured constructions' of the provisions of the order").

**3.** At her March 17, 1994 SEC deposition, the defendant responded, in pertinent part, as follows:

> Q: Is it your understanding that the funds in Air Tech's subaccount at Chemical Bank were frozen pursuant to court order?
> A: It is my understanding the investor funds were frozen.
> Q: Did anyone indicate to you that that freeze was lifted, that the court lifted that freeze order?
> A: No, that was not communicated.
> Q: Did you at any time have an understanding that from the time the account was frozen until the present, that the court lifted the freeze order?

> A: I did not have an understanding that it had been lifted. . . .

SEC Dep. at 159–60.

\*   \*   \*   \*   \*   \*

**4.** We also note that defendant fails to recite accurately the allegations contained in the Indictment. The Indictment is not limited to allegations that the defendant violated the Freeze Order by withdrawing funds from the Air Tech subaccount, as the defendant contends. (Hodge Br. 2). Rather, the Indictment alleges that the defendant violated the Freeze Order by withdrawing funds from her Client Funds Account, which includes both her primary and subaccounts.

It is clear from the circumstances surrounding the entry of the Freeze Order that the defendant knew that the assets which she maintained as the custodian of investors' funds were covered by the Freeze Order. *See id.; see also United States v. Christie Industries, Inc.,* 465 F.2d at 1002. It is implausible to believe that defendant, as the accountant for Air Tech and as its custodian for investors' funds, was not aware of her obligations to account for and maintain all Air Tech funds within her control, and if in doubt, to seek clarification from the Court before disposing of assets. *See United States v. Greyhound Corporation,* 508 F.2d at 532 ("While a defendant is, of course, not required to seek such a clarification, a failure to do so when combined with actions based upon a twisted or implausible interpretation of the order will be strong evidence of a willful violation of the decree"). We find this conclusion especially compelling where, as here, the defendant was personally served with a copy of the Freeze Order. (*See* Certification of Service). As the Seventh Circuit commented in *United States v. Greyhound Corporation,*

> The very issuance of the order puts the party on notice that his past acts have been wrongful. 'No concept of basic fairness is violated by requiring a person in this position to be more than normally careful in his future conduct.'

*Id.* at 532–33 (citing *United States v. Custer Channel Wing Corp.,* 247 F.Supp. 481 (D.Md. 1965), *aff'd,* 376 F.2d 675 (4th Cir.), *cert. denied,* 389 U.S. 850, 88 S.Ct. 38, 19 L.Ed.2d 119 (1967)).

Significantly, the defendant also made statements to Judge Stanton during an appearance in connection with the SEC's civil case which demonstrate that she knew that the investors' funds held in her Client Funds Account were subject to the Freeze Order. (See the May 24, 1994 transcript, attached as Exhibit H to Government Mem.). When Judge Stanton asked the defendant if she wished to offer any reason why the Court should not incarcerate her for failing to return investors' funds, the defendant responded:

> Your Honor, I am really known as a workaholic, and I have been working several jobs to try several approaches to try and get this money back. *And I've never argued the fact that it was due back.* And I have never had any opposition to trying to get it back and trying to get it back as soon as possible.

(Exhibit H at 3) (emphasis added).

■ The defendant additionally emphasizes a purported discrepancy between the wording of the Freeze Order and the charging language in the Indictment, alleging that the Freeze Order refers to the "assets of the Defendants" while the Indictment only "refers to the assets held in the Air Tech subaccount as 'investors' funds' held by Hodge 'as custodian'". (Hodge Br. 6). The defendant argues that given this discrepancy, it is unclear whether the investors' funds are "assets of the Defendants" and thus subject to the Freeze Order. (Hodge Br. 6).

We cannot adopt the proposition that a company's investors' funds are not assets of that company. Moreover, the Freeze Order refers not only to Air Tech's assets, but categorically states that in addition any *"funds,* or other properties (including money, real or personal property, securities, choses in action or property of any kind whatsoever)" are also subject to the freeze. (See Exhibit B at 9) (emphasis added).

■ Finally, the defendant argues that the Freeze Order's provision for the release of "reasonable living expenses" is ambiguous insofar as it does not specify whose living expenses are covered, or how the parties are to determine what is a reasonable amount. (Hodge Br. 6). The defendant offers no explanation, however, as to how this purported deficiency in the language of the Freeze Order is relevant to a determination of the applicability of the Freeze Order to her. It is also clear from the background behind the Freeze Order that it was DiGirolamo who was entitled to the release of reasonable living expenses from the frozen assets. *See United States v. Greyhound Corporation,* 508 F.2d at 532 (in a criminal contempt case, the court should consider the entire background behind the order). The defendant clearly understood this, as evidenced by her

testimony at the March 17, 1994 deposition in which she admitted that she had released $4000 to DiGirolamo because this money "was allocated as his living allowance that was—that the judge allowed him in this situation." (SEC Deposition 85–87).[5]

In sum we find that the language contained in Judge Stanton's Freeze Order is clear, specific, and leaves no uncertainty as to whom it is addressed. There is no doubt that, if the Government proves the facts that it has alleged in the Indictment, the defendant will be shown to have known that her conduct violated both the letter and the spirit of the Freeze Order. Accordingly, defendant's motion to dismiss the Indictment is denied.

SO ORDERED.

---

**5.** Although the defendant released $4000 to DiGirolamo from her Client Funds Account after the imposition of the Freeze Order, the Government did not allege in the Indictment that this disbursal constituted a violation of the Freeze Order.