**EMPIRE NATIONAL BANK OF CLARKSBURG**

v.

**PENFIELD COAL & COKE COMPANY,**
a Corporation

**Consolidated Gas Supply Corporation and Godfrey L. Cabot, Inc., Appellants.**

No. 15084.

United States Court of Appeals
Third Circuit.

Argued April 8, 1965.

Decided Jan. 11, 1966.

Cloyd R. Mellott, Pittsburgh, Pa. (William H. Eckert, Edwin L. Klett, Eckert, Seamans & Cherin, Pittsburgh, Pa., on the brief), for appellants.

Richard C. Witt, Pittsburgh, Pa. (Thomas Lewis Jones, White, Jones & Gregg, Pittsburgh, Pa., on the brief), for appellees.

Before GANEY and FREEDMAN, Circuit Judges, and KIRKPATRICK, District Judge.

GANEY, Circuit Judge.

The matter here before the court on appeal concerns the denial by the District Court for the Western District of Pennsylvania, of a motion for construction of certain restraining orders entered by that court in a federal equity receivership proceeding. The receivership, founded upon diversity of citizenship, had its inception on June 18, 1926, at which time a receiver for the assets of the Penfield Coal & Coke Company was appointed.

It would serve no useful purpose to recite in detail the complexity of the facts here involved, but all material facts requisite for a proper determination of the questions posed before the court will be recited.

The Penfield receivership was actively administered between the years 1926 and 1931, but the docket is devoid of any entry until February 24, 1937, when the receivership was dismissed pursuant to Supplemental Rule No. 8, in Equity. Further reference to the docket entries discloses that, except for the filing of the receiver's reports in 1938 and 1942, the receivership was dormant until a petition for further administration of the assets of the estate was filed in the court below on November 23, 1960, and on that date the court entered a temporary restraining order and later a permanent injunction on February 28, 1962, wherein it was stated: "That all the parties to this action, creditors and stockholders, and all sheriffs, marshals and other officers, and their respective attorneys, servants, agents and employees, and all other persons, firms and corporations be, and they hereby are, jointly and severally, permanently enjoined and restrained from directly or indirectly commencing or continuing any action at law or suit or proceeding in equity against Penfield Coal & Coke Company or its successor receiver in any court except this Court, or from executing or issuing or causing the execution or issuance out of any other court of any writ, process, summons, attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of, or interfering with or enforcing any lien upon, any property owned by or in the possession of Penfield Coal & Coke Company, or the proceeds from the sale of gas produced from properties owned or formerly owned by or in the possession of Penfield Coal & Coke Company, * * *".

Prior to the filing of the petition for further administration of the Penfield receivership on November 23, 1960, an action in ejectment was started in the Court of Common Pleas of Clearfield County, by certain parties against a number of individuals, none of whom had any connection with the receivership, for the gas rights under Warrants 2000 and 2001 in Clearfield County, Pennsylvania. Likewise, neither Penfield Coal & Coke Company nor its successor receiver was or ever had been a party to this state court action. Later, the appellant in this present appeal, the New York State Natural Gas Corporation and one Godfrey L. Cabot intervened and Judge Morris, who adjudicated the cause of action on November 8, 1963, held that the New York State Natural Gas Corporation and Godfrey L. Cabot owned the only valid gas lease on Warrants 2000 and 2001 and had the sole right to produce gas under the Warrants. Later, the court below, 173 F. Supp. 184, through Judge Willson, after full hearing in an action by the New York State Natural Gas Corporation against Swan-Finch Gas Development Corporation, held that the only valid title to Warrant 2001 was in the New York State Natural Gas Corporation, and upon ap-

peal to this court the judgment of Judge Willson was affirmed in New York State Natural Gas Corporation v. Swan-Finch Gas Development Corporation, 3 Cir., 278 F.2d 577, holding that in a diversity action the real property law of Pennsylvania was controlling. Warrant 2000, also in issue in our case, is in the identical chain of title as Warrant 2001.

Exceptions to Judge Morris' adjudication were filed by the plaintiffs in the state court action and argument was set for January 14, 1964. However, on January 7, 1964, one week prior to the scheduled date for argument, the successor receiver of Penfield presented a petition to Judge Miller in the lower court in the Penfield receivership, seeking leave to litigate the question of title to the gas under Warrants 2000 and 2001, alleging that the successor receiver had a certain ⅖ interest in the said Warrants, the prayer of which petition contained a specific prohibition against any state court action. The argument before Judge Morris was never re-scheduled nor heard for the reason that an attorney for the appellants in the state court action informed Judge Morris of the outstanding restraining orders of November 23, 1960, and February 28, 1962, and that he could not "with impunity risk taking further steps in the case until the Federal Court" had acted upon the successor receiver's petition. At the hearing on the application by the successor receiver on his petition of January 7, 1964, the New York State Natural Gas Corporation and Cabot, who were not parties to the receivership proceeding, appeared specially for the sole purpose of contesting the prayer of the petition seeking to have all parties to the state court action enjoined from proceeding therewith. However, at the hearing, counsel for the successor receiver withdrew his application for a restraining order specifically prohibiting any further proceeding with the state court action, advising the court that the other restraining orders of November 23, 1960, and February 28, 1962, prohibited any further procedure in the state court action before Judge Morris in Clearfield County.

At the argument before this court on the lower court's denial of the appellants' motion for construction of its order, this court suggested to counsel for the receiver that, in view of two previous holdings by a state and federal court that valid title for the gas rights under Warrants 2000 and 2001 were in the New York State Natural Gas Corporation, counsel for the receiver consent to the complete disposition of the state court action, including an appeal to the Supreme Court of Pennsylvania and that if Judge Morris' holding was affirmed by the Supreme Court of Pennsylvania, that counsel consult with the lower court as to the possibility of abandonment of any right to title of the said Warrants. The answer to this suggestion was a petition by counsel for the receiver to the lower court to litigate title to Warrants 2000 and 2001, the prayer of which was granted by the court in an order dated June 17, 1964. This direction by the lower court will require, for the third time, litigation of the title to these two Warrants 2000 and 2001 which, as has been indicated, two courts have held were validly in the New York State Natural Gas Corporation, and the time consumed in relitigating this matter will require at least two more years of delay, if the other two court actions are any criteria of the time to be consumed, and by virtue of the ambiguity of the lower court's injunctions, the state court action will be in abeyance.

■ The main argument of the successor receiver before this court was that the order issued by the lower court in denying the construction of its previous injunctive orders was not appealable. However, under Federal Rule 65(d), it is clearly stated that injunctive orders must be specific in defining the particular acts prohibited. In Regal Knitwear Co. v. N.L.R.B., 324 U.S. 9, at p. 15, 65 S.Ct. 478, at p. 481, 89 L.Ed. 661, it is stated: "If defendants enter upon transactions which raise doubts as to the applicability of the injunction, they may petition the court granting it for a modification or construction of the order. State of New

Jersey v. New York City, 296 U.S. 259 [56 S.Ct. 188, 80 L.Ed. 214]. While such relief would be in the sound discretion of the court, we think courts would not be apt to withhold a clarification in the light of a concrete situation that left parties or 'successors and assigns' in the dark as to their duty toward the court. Enforcement orders are issued to effectuate the purposes of the Act, not for the entrapment of parties, and courts no less than parties desire to avoid unwitting contempts as well as to punish deliberate ones." To the same effect is In Re United Gas Corporation, 162 F.2d 409 (3rd Cir.), and Judge O'Connell's concurring opinion at p. 412 thereof. We feel the question raised here by the court's denial of the motion to construe its orders is appealable in conformity with the above cited cases, since all the parties to the state court action are alien to the equity receivership in the court below and, in our opinion, great injustice would eventuate to them if the exceptions to Judge Morris' adjudication are not argued and gone on to final conclusion.

Repeated attempts made by counsel for the New York State Natural Gas Corporation requesting Judge Miller to advise them whether the existing restraining orders applied to their state court action were to no avail. When told that counsel for the New York State Gas Corporation said that they would proceed if Judge Morris would hear them in Clearfield County to argue the exceptions which had been filed to the court's adjudication, the court replied: "I am only thinking of those orders which have heretofore been made in this case. Whether or not you are in violation or would be in violation of those orders, I am not now saying and I am not in a position to say.", and later the court advised counsel when he advised the court that in deference to him he had not asked Judge Morris to re-schedule the argument on the exceptions to the adjudication, the court replied: "Well, I feel that in view of the petition that was pending before me, Mr. Eckert, that that was a very wise course to pursue.", and when pressed again for some understanding of the restraining orders, the court replied: "Well, that is entirely up to you. I am passing no opinion on that at all."

A formal motion for construction of the orders of the court was filed on the 12th day of June, 1964, when the court, in an order dated July 24, 1964, denied the same. "The court is of the opinion that they are clear and speak for themselves." It is the appeal from this order that is presently before the court.

To withhold review by the state court of the exceptions filed by the appellant places both parties, but particularly the appellee, the winning party in the court below, in a dilemma of either acceding to an order which they allege to be legally deficient or subjecting themselves to the risk of a fine and imprisonment for disobedience, which certainly to our minds creates a status much to be avoided.

Accordingly, we hold that there is no violation of the orders of the lower court of November 23, 1960, and February 28, 1962, in all parties proceeding to the disposition of the exceptions noted before Judge Morris for argument. They may do so, in disposing of the matter therein involved, with impunity and, in nowise, be held guilty of contempt of the lower court.

The order denying construction of the lower court's order of July 24, 1964, is reversed, with direction to the lower court to proceed in conformity with this opinion.