INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, LOCAL 249, Plaintiff,

v.

WESTERN PENNSYLVANIA MOTOR CARRIERS ASSOCIATION, Defendant.

Civ. A. No. 76–815.

United States District Court, W. D. Pennsylvania.

April 29, 1977.

Joseph J. Pass, Jr., Jubelirer, McKay, Pass & Intrieri, Pittsburgh, Pa., for plaintiff.

Martin Lubow, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

TEITELBAUM, District Judge.

On April 6, 1977, this Court entered an Order denying the plaintiff union's request for injunctive relief and dismissing its complaint in this action brought under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), to enjoin defendant's alleged violation of a labor contract to which the parties are signatories.

The Order previously entered in this case, which it is our present purpose to explicate, followed from the Court's rejection of the asserted proposition that defendant—an association of motor carriers and allied employers charged with the negotiation and administration of labor agreements involving the operation of those carriers in the counties comprising Western Pennsylvania[1] —breached its collective bargaining agreement with plaintiff by implementing the decision of a "labor arbitrator," the Eastern Conference Joint Area Committee (ECJAC),[2] eliminating union-favored restrictions in Allegheny County on a trucking industry practice known as "spotting."

"Spotting" is an industry term denoting an employer's practice of directing its drivers to leave their trailers at a designated location for loading or unloading, normally where a lengthy delay is anticipated. When an employer "spots" a trailer, the employee driver does not remain with the vehicle while it is waiting to be loaded or unloaded, and consequently is not paid wages for this period of time.

Labor contracts with Teamster locals permit spotting in all parts of Western Pennsylvania other than Allegheny County. In Allegheny County, the jurisdiction of plaintiff Local 249, an employer's right to spot trailers historically has been restricted. Except at a few designated, agreed-upon terminal facilities, spotting has been prohibited throughout plaintiff's jurisdiction; the practice in Allegheny County has been that if a driver is dispatched to a designated customer, he or she is to remain with the trailer, earning wages, while it is waiting to be, and actually is, loaded or unloaded. It is undisputed that this prohibition against spotting—which plainly places defendant's Allegheny County member firms at a disadvantage with their competitors—has been the practice, understanding or standard within the jurisdiction of plaintiff Local 249.

The ECJAC "award" now challenged by the union—implementation of which by defendant and the employers it represents constitutes the contractual violation complained of—altered the historical standard by eliminating restrictions on spotting in Allegheny County. Plaintiff herein asked that the Court overturn the decision of the

1. More specifically, defendant Western Pennsylvania Motor Carriers Association represents its member employers on the basis of powers of attorney and signs appropriate labor agreements with the involved local union on behalf of such members.

2. The parties agree that while the proceeding before the ECJAC, a joint labor-management committee, may not be styled "arbitration" in the traditional sense, it resulted in a decision that for present purposes must be deemed and treated as an arbitration award. See *General Drivers Local 89 v. Riss*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1973); *Donley v. Motor*

*Freight Express, Inc.*, 344 F.Supp. 290 (W.D.Pa. 1972), *affd.* 481 F.2d 1398 (3d Cir. 1973). Our approach to the action *sub judice* is guided by an awareness of this proposition and the attendant applicability of the strong federal policy favoring arbitrated awards. See, e. g., *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the third in a series of landmark decisions, commonly styled the "*Steelworkers Trilogy*," in which the Supreme Court delineated the limited role of the judiciary in reviewing a labor arbitration award.

ECJAC and, by injunction, reimpose and perpetuate the former prohibition against spotting within the jurisdiction of Local 249. This I have refused to do, believing federal judicial intervention inappropriate in circumstances where the sole genuine issue is admittedly whether *vel non* the ECJAC decision exceeded that committee's authority in this matter and where it appears that the ECJAC both had jurisdiction to act and acted within the bounds of its contractual authority.

The dispute regarding an employer's right to spot trailers in plaintiff's jurisdiction was submitted to the ECJAC in July, 1975, some two years into the operative period of the collective bargaining agreement then in effect between the parties. While submission of the dispute took the form of a request for relief on the part of defendant, it is clear that the local union joined in submission of the issue to the joint conference committee.[3] It is undisputed that not only the merits of the spotting issue, but also the jurisdictional issues raised by plaintiff in this forum were argued to and considered by the ECJAC.

The spotting dispute in question was submitted to the ECJAC under Articles 6 and 44 of the parties' labor contract. These Articles provide in pertinent part—commonly known as the "maintenance of standards clause"—as follows:

"The Employer agrees that all conditions of employment in his individual operation relating to wages, hours of work, overtime differentials, and general working conditions shall be maintained at not less than the highest standards in effect at the time of the signing of this Agreement, and the conditions of employment shall be improved wherever specific provisions for improvement are made elsewhere in this Agreement. It is agreed that the provisions of this section shall

not apply to inadvertent or bona fide errors made by the Employer(s) or the Union in applying the terms and conditions of this Agreement if such error is corrected within ninety (90) days from the date of the error. If not corrected within ninety (90) days, such better condition shall remain in effect. However, a request for relief from such error may be filed in writing with the appropriate Conference Area Committee. The Conference Area Committee, by a majority vote, shall determine whether and in what manner such better terms and/or conditions resulting from such error shall be continued or eliminated."

The ECJAC assumed jurisdiction of the dispute under the above language. A hearing was scheduled and subsequently held. Thereafter, the "arbitrator" declined to determine the merits of the spotting question, but simply retained jurisdiction, postponing a decision in the matter until after completion of impending negotiations on a new labor agreement, the parties' then-operative agreement being due to expire on March 31, 1976.

Accordingly, prior to the contract expiration date, plaintiff and defendant undertook to attempt to negotiate their differences regarding the spotting issue during the local phases of the 1976 national freight negotiations. These local negotiations were not productive with regard to the spotting dispute—defendant was unsuccessful in its efforts to negotiate an agreement with Local 249 providing for the elimination of restrictions on spotting and granting defendant's Allegheny County member employers the same unfettered right to spot as exists elsewhere throughout Western Pennsylvania.

During the final week of local negotiations, defendant's proposal regarding the elimination of restrictions on spotting had

---

**3.** Plaintiff's Exhibit 1, a submission agreement, is admittedly signed by plaintiff's President, Thomas Fagan, on behalf of Local 249's membership. The agreement provides: "We, the undersigned hereby agree to submit the dispute under the Rules of Procedure prescribed by the Eastern Conference Joint Area Committee

. . . The undersigned further agree that a majority decision of the Eastern Conference Joint Area Committee in the above dispute will be final, conclusive and binding, with no appeal and, further, that neither party will attempt through any overt acts, to void the decision rendered."

not been agreed upon. Therefore, pursuant to the rules established by plaintiff and defendant, the spotting issue was submitted along with all other unresolved issues to the National Negotiating Committee. All of these issues were resolved in the course of the national negotiations except the one involving the proposed elimination of spotting restrictions within Local 249's jurisdiction. The spotting issue was at defendant's request withdrawn from consideration by the National Negotiating Committee.

In May, 1976, subsequent to defendant's withdrawal of the spotting dispute from negotiations, the ECJAC rendered its decision in this matter in the form of an award which eliminated previously operative restrictions and permitted defendant's member firms to spot trailers in Allegheny County. Plaintiff attacks this arbitrated award in a multi-pronged argument founded on the fundamental allegation that the ECJAC's spotting decision is null and void for reason that the joint committee's action exceeded the limits of its contractually-derived authority. Thus, plaintiff submits, the "maintenance of standards clause" contained in the parties' previous agreement, and remaining unchanged in their current one, requires continuation of the prohibition against spotting as the highest standard in effect at the time of contracting.

While plaintiff does not contend that the ECJAC generally lacks authority to determine whether a given "highest standard" shall be continued, modified or eliminated (such authority having been expressly conferred upon the appropriate conference committee by Articles 6 and 44), plaintiff does urge that the contract precludes such a determination by the ECJAC where it has not been requested within 90 days from the date of an "error" to relieve a party from the operation of a highest standard or condition resulting therefrom. It is the union's position that by assuming jurisdiction of and deciding a standards dispute submitted some two years into the contract period, and allegedly not resulting from anything susceptible to characterization as "error," the ECJAC transgressed the bounds of its

authority, thus rendering an award that is in effect a nullity.

■ I do not agree. It is true, as plaintiff asserts, that the question here is not merely one of "procedure," properly left to the arbitrator, see *John Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), but rather one of arbitrability, of the arbitrator's authority to act or make an award. As such, the question *sub judice* is properly subject to review by the Court. See *John Wiley & Sons v. Livingston, supra* at 546–547, 84 S.Ct. 909; *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). As our Court of Appeals stated in *Bieski v. Eastern Automobile Forwarding Co.,* 396 F.2d 32, 37–38 (3d Cir. 1968):

".   .   . [W]ith the specific labor agreement as a necessary starting point, the question of judicial review of a 'final' private decision should turn on the adequacy of that private decision under the contract in terms of the controversy presented. If the court is convinced both that the contract procedure was intended to cover the dispute and, in addition, that the intended procedure was adequate to provide a fair and informed decision, then review of the merits of any decision should be limited to cases of fraud, deceit, or instances of unions in breach of their duty of fair representation.

"If, however, the private decision complained of is a 'jurisdictional' one   .   . then the court is a proper forum to review this decision on the basis of its analysis of the contract entered into by the parties.   .   .   ."

■ In sum, then, I do not quarrel with the proposition advanced by plaintiff that the Court should review the merits of the ECJAC's affirmative jurisdictional decision. Mere "procedural" questions growing out of a dispute may be for the arbitrator, as defendant vigorously urges, but the instant question is of a different and more fundamental stripe, involving the very authority of the ECJAC to consider and decide the spotting issue. In this context, the judicial

abstention requested by defendant would be inappropriate.[4]

▮ We turn then to the central question of arbitrability and, consequently, to the merits of the ECJAC's jurisdictional decision in this matter of spotting. It is at this point, on the issue of construing the contract language which is the source of the ECJAC's authority (rather than on the threshold issue of availability and scope of review), that the Court's view diverges from that of the plaintiff union.

Essentially, the union contends that the pertinent contract language—i.e., the language of the "maintenance of standards clause" contained in Articles 6 and 44 (quoted above)—limits the ECJAC's dispute—settling authority to the resolution of questions involving the continuation or elimination of a given "highest standard" or practice (1) in effect because of a bona fide error, and (2) where a request for relief is submitted to the joint committee within 90 days of such error. In my view, the union's construction of the operative clause is at best overly restrictive.

First, it seems to me patent that, as the "arbitrator" necessarily determined, the contract does not provide for a 90-day (after error) limitations period on submissions to the ECJAC. The next-to-last sentence of the "standards clause" clearly contemplates filings with the ECJAC at any time, the 90-day period pertaining to and limiting only the availability of "self-help" as a means of correcting errors. I believe that this construction of the jurisdictional provi-

sion not only "draws its essence" from the parties' agreement,[5] but also is the most reasonable interpretation of the contract.

Second, as to plaintiff's assertion that the ECJAC exceeded its authority by accepting jurisdiction of and deciding a standards dispute not resulting from any "error," bona fide or inadvertent, the Court is wholly unprepared to say on the basis of the present record that the acquiescence of defendant and its members in the development of prohibitions against spotting in Allegheny County was not an error of the type contemplated by the relevant contract clause. Initially allowed by defendant's employer membership, the restrictions on spotting were eventually recognized as unique to Allegheny County, and thereby the source of serious economic disadvantage to Allegheny County trucking firms. At that point, after inquiry into and full recognition of the situation, the spotting dispute was submitted to the ECJAC. That committee heard argument and perforce determined that relief from an "error" was indeed requested by defendant. Mindful of the strong policy favoring arbitration and findings of arbitrability, I cannot say that allowing the spotting prohibition to develop only in Allegheny County, without an awareness of the situation throughout the remainder of Western Pennsylvania, was not such an inadvertent or bona fide error as is required to trigger ECJAC jurisdiction under the contract. On the contrary, it would appear to me that defendant's uninformed acquiescence in the development of the disputed standard is precisely that type

4. A further observation is in order at this juncture: despite some apparent confusion in the matter, it appears that the merits of the ECJAC spotting award—that is, the substance of the decision itself—are not challenged in this action. What is challenged is the jurisdiction or authority of the arbitrator to consider the dispute and make *any* award, including the one ultimately rendered. Accordingly, inasmuch as the issue before me is the ECJAC's authority to render an award in this case, and not the award itself, our review properly encompasses the merits of the arbitrator's jurisdictional decision (as noted *supra*) and is not limited to an application of the so-called "essence test" enunciated by the Supreme Court in *United Steelwork-*

*ers of America v. Enterprise Wheel and Car Corp., supra* (at 597). For an elaborated definition of the "essence test" as applied in this Circuit, see *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969). See also this Court's relatively recent opinion in *Teamster's Local 249 v. Potter-McCune Co.,* 412 F.Supp. 8 (W.D.Pa.1976).

5. The union apparently would have the Court apply the *"essence test"—the standard for review of an arbitration award itself—in judging the ECJAC's interpretation of its authority. As previously noted, I believe closer inquiry is required here. Such inquiry, however, impels rejection of the union's position.*

of error which, under a reasonable reading of the agreement, must be deemed to trigger access to a ECJAC determination regarding continuation, modification or elimination of that standard.

In sum, then, I find that the "arbitrator" in this case did not exceed the scope of its contractual authority. The parties' collective bargaining agreement conferred upon the ECJAC jurisdiction to hear and determine the disputed spotting standard.

We are left with the prospect of addressing each of the welter of secondary issues raised (in either the formal sense or somewhat more loosely) by the union during this proceeding. We decline the opportunity as unnecessary.

The critical question here is one of arbitrability. In that regard, the Court has stated its view. The remaining union contentions—including those alleging: lack of notice or a further proceeding prior to issuance of the ECJAC's final decision in May, 1976; divestiture of any continuing ECJAC authority to decide the spotting issue (assuming *arguendo* initial jurisdiction) by reason of defendant's ultimate withdrawal of the issue from the national negotiations; and the impropriety of permitting a party to obtain through a dispute settlement procedure a proposal which that party first submitted to and was unsuccessful in obtaining in the negotiation process—have been fully considered. In my judgment, each is either unfounded or inapposite in the present factual context. None is persuasive of a result different from that embodied in the Court's Order of April 6, 1977.

The dispositive Order referred to, issued in the absence of even a marginally cognizable allegation of fraud or deceit, stemmed fundamentally from a coupling of an acute awareness of labor arbitration's favored status with the Court's conviction ". . both that the contract procedure was intended to cover the dispute and, in addition, that the intended procedure was adequate to provide a fair and informed decision . . .." *Bieski v. Eastern Automobile Forwarding Co., supra* at 38. Given my agreement with the ECJAC's interpretation of the scope of its jurisdiction and authority under the contract and the clear adequacy of the joint committee proceeding, the Order will stand as entered.

For reasons set forth above, plaintiff's request for injunctive relief has been denied and the instant action dismissed.