**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL 249, Appellee,**

v.

**WESTERN PENNSYLVANIA MOTOR CARRIERS ASSOCIATION, Appellant.**

No. 80–2406.

United States Court of Appeals, Third Circuit.

Argued April 20, 1981.

Decided Sept. 25, 1981.

James A. Prozzi (argued), Lubow & Prozzi, P. C., Pittsburgh, Pa., for appellant.

Joseph J. Pass, Jr. (argued), Edward H. Walter, Jubelirer, Pass & Intrieri, P. C., Pittsburgh, Pa., for appellee.

Before HUNTER, SLOVITER, Circuit Judges, and STAPLETON,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

This is an appeal from an order of the United States District Court for the Western District of Pennsylvania, holding appellant, Western Pennsylvania Motor Carriers Association ("the Association") in civil contempt for failure to comply with a previous injunctive order of that court. The district court directed appellant to pay the appellee, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 249 ("Local 249") reasonable attorney's fees incurred in prosecuting the contempt proceedings. The court also denied the Association's motion to modify the order giving rise to the contempt. We will affirm.

## I.

Local 249 has been involved in a protracted labor dispute with the Association over a trucking industry practice known as "spotting." As we have explained in a previous opinion in this controversy, spotting is a practice "whereby a carrier may instruct a driver to leave his trailer at a specified location, and not to remain with it while it is being loaded or unloaded. The driver may then be assigned to other duties." *International Brotherhood of Teamsters, Local 249 v. Western Pennsylvania Motor Carriers Ass'n,* 574 F.2d 783, 785 (3d Cir.), cert. denied, 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 122 (1978). Spotting is prohibited within Local 249's jurisdiction, Allegheny County, except at a few mutually designated terminal facilities. In all other counties of Western Pennsylvania, collective bargaining agreements with Teamsters locals permit spotting.

On July 3, 1975, the Association submitted a request to the Eastern Conference Joint Area Committee ("ECJAC") seeking relief from the spotting restrictions within Allegheny County. The ECJAC is a joint labor-management committee created pursuant to the collective bargaining agreement between the Association and various Teamsters locals, including Local 249. It is charged with the responsibility of resolving certain disputes between employers and local unions. In May, 1976, the ECJAC rendered a decision eliminating all restrictions on spotting in Allegheny County.

On June 18, 1976, Local 249 initiated an action against the Association in district court under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1976), seeking to set aside the decision of the ECJAC, and by injunction, to reimpose the former prohibition against spotting in Allegheny County. The district court denied injunctive relief and dismissed the complaint, holding that the ECJAC's decision, as that of an arbitrator, was not reviewable in federal court. *International Brotherhood of Teamsters, Local 249, v. Western Pennsylvania Motor Carriers Ass'n,* 430 F.Supp. 1258 (W.D.Pa.1977). This court reversed, holding that because the ECJAC lacked jurisdiction over the spotting dispute, its award would be vacated. We remanded the case to the district court for further proceedings, including "the entry of an appropriate injunction." *Local 249,* 574 F.2d at 789.

Following this court's decision, the parties agreed to a proposed injunction. The district court, by order of October 16,

* Honorable Walter K. Stapleton, United States District Judge for the District of Delaware, sitting by designation.

1978, and with the consent of both parties, entered an injunction which provided:

 2. The Defendant [the Association], its agents, employees, officers and all persons acting with or on their behalf, and the employers represented by the Defendant, their agents, employees, officers and all persons acting with or on their behalf, are hereby permanently enjoined from 'spotting' trailers within the Defendant's jurisdiction except where there has been specific mutual agreement with the Plaintiff [Local 249] allowing trailers to be 'spotted.'

 3. That the Defendant, its agents, employees, officers and all persons acting with or on their behalf and the employers represented by the Defendant, their agents, employees, officers, and all persons acting with or on their behalf, are permanently enjoined from requiring any and all employees represented by Plaintiff to spot trailers in any area which has not been mutually agreed to between the Plaintiff and Defendant.

Appendix at 73a. The Association was also ordered "to do all acts and things necessary to communicate the contents of this [order] to the parties set forth in Paragraphs 2 and 3 hereof." *Id.* at 74a.

The Association moved for clarification of the injunction on November 26, 1979. In the papers supporting its motion, the Association contended that the prohibition on spotting had been meant to apply only to its Allegheny County members, that is, those carriers maintaining terminal facilities in Allegheny County. It noted that Local 249 had taken the position that the order prohibited spotting by all Association members, regardless of whether they maintained terminal operations within Allegheny County. The Association urged the district court to "clarify its Order to unequivocally state that the injunction only prohibits Association members who maintain termi-

nal operations in Allegheny County from spotting except where mutually agreed upon by the parties to this action." Docket Entry No. 20 at 4. The district court heard argument on January 11, 1980; it denied the motion from the bench, indicating "its view that the consent injunction merely meant what it purported to state, *i. e.*, spotting by all members of [the Association] is prohibited in Allegheny County." Appendix at 68a.

On May 15, 1980, Local 249 moved for an order to show cause why the Association should not be held in contempt of the district court's injunction. The union averred that five members of the Association had spotted trailers within Allegheny County without prior agreement. In response, the Association asserted, as it had in its motion to clarify, that the five named members were not bound by the injunction because they did not maintain terminals in Allegheny County. The Association then moved to amend the injunction to reflect its position with respect to non-Allegheny County members.

The district court issued a memorandum opinion on August 14, 1980, holding the Association in civil contempt for failing to notify all of its members of the terms of the injunction. The court awarded damages in the form of attorney's fees to Local 249 to defray the cost of prosecuting the contempt proceedings. The court also denied the Association's motion to amend the injunction. This appeal followed.

## II.

As a threshold issue, Local 249 challenges the appellate jurisdiction of this court. The appellee asserts that the district court's August 14, 1980 memorandum opinion and order do not constitute an appealable judgment which conforms with Rules 58 and 79(a) of the Federal Rules of Civil Procedure.[1] The union contends that the

---

1. Fed.R.Civ.P. 58 provides, in pertinent part: "[e]very judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)."

Fed.R.Civ.P. 79(a) states, in relevant part:
 All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket

district court postponed the entry of final judgment until a determination had been made as to the amount of attorney's fees to be awarded. Local 249 also argues that the unresolved question of attorney's fees prevents the district court's order from being final, and hence appealable, within the meaning of 28 U.S.C. § 1291 (1976).[2] We will consider these contentions separately.

█ It is undisputed that the district court failed to enter its judgment on a separate document as prescribed by Rules 58 and 79(a). However, as the Supreme Court held in *Banker's Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam), the separate document requirement should not be construed so as to defeat the right to appeal:

> [t]he separate-document requirement was thus intended to avoid the inequities that were inherent when a party appealed from a document or docket entry that appeared to be a final judgment of the district court only to have the appellate court announce later that an earlier document or entry had been the judgment and dismiss the appeal as untimely ... Certainty as to timeliness, however, is not advanced by holding that appellate jurisdiction does not exist absent a separate judgment. If, by error, a separate judgment is not filed before a party appeals, nothing but delay would flow from requiring the court of appeals to dismiss the appeal. Upon dismissal, the district court would simply file and enter the separate judgment, from which a timely appeal would then be taken. Wheels would spin for no practical purpose.

*Id.* at 385, 98 S.Ct. at 1120 (footnote omitted). Our review of the record satisfies us that the district court intended its August 14, 1980 order to serve as its judgment in the instant case.[3] Accordingly, "there would appear to be no point in obliging the appellant to undergo the formality of obtaining a formal judgment." *Id.* at 386, 98 S.Ct. at 1121, *quoting, 9 Moore's Federal Practice,* ¶ 110.08[2], at 120 n.7 (2d ed. 1970).

Having decided that Rules 58 and 79(a) present no obstacle to appealability, we still must consider Local 249's assertion that the district court's order was not final for the purposes of section 1291. *Banker's Trust*, 435 U.S. at 385–86 n.6, 98 S.Ct. at 1120–21 n.6. The union maintains that because the district court's August 14, 1980 order, holding the Association in contempt, reserved the right to schedule further hearings if the parties could not agree as to what constituted reasonable attorney's fees, it was not final under this court's holding in *Richerson v. Jones*, 551 F.2d 918 (3d Cir. 1977). However, our more recent decision in *DeLong Corporation v. Raymond International, Inc.*, 622 F.2d 1135, 1138–39 n.3 (3d Cir. 1980) stands for the contrary position: an order determining an entitlement to attorney's fees, but not the amount, is final and appealable.

█ We need not decide the question of appealability under section 1291, because we hold that the district court's denial of the Association's motion to amend the injunction was an appealable interlocutory order vesting this court with jurisdiction under 28 U.S.C. § 1292(a)(1) (1976).[4] *Cf. United States v. Spectro Foods Corporation*, 544 F.2d 1175, 1179 n.5 (3d Cir. 1976). The

on the folio assigned to the action and shall be marked with its file number. These entries shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court and of the returns showing execution of process. The entry of an order or judgment shall show the date the entry is made.

2. Section 1291 provides: "[t]he courts of appeals shall have jurisdiction from all final decisions of the district courts of the United States.... except where a direct review may be had in the Supreme Court."

3. Indeed, the entire memorandum opinion and the accompanying order were entered on the docket. Docket Entry No. 36.

4. Section 1292(a)(1) provides: "[t]he courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."

denial of appellant's motion to construe or modify an injunctive order provides appellate jurisdiction in this case. *Hyde Construction Company v. Koehring Company*, 388 F.2d 501, 505 (10th Cir.), *cert. denied*, 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419 (1968); *Empire National Bank of Clarksburg v. Penfield Coal & Coke Company*, 354 F.2d 873, 876 (3d Cir. 1966). *Cf. Kerwit Medical Products, Inc. v. N & H Instruments, Inc.*, 616 F.2d 833, 836 (5th Cir. 1980) (denial of Rule 60(b) motion was "among other things, a determination that the injunction would remain in effect while the district court considered the damages to be awarded as a result of [appellant's] contempt," and appealable under section 1292(a)(1)). Once vested with section 1292(a)(1) jurisdiction, we may also review the district court's finding of civil contempt. *Spectro Foods*, 544 F.2d at 1179. *See also Latrobe Steel Company v. United Steelworkers of America*, 545 F.2d 1336, 1340 (3d Cir. 1976). Accordingly, the instant appeal is properly before us.

### III.

The district court's injunction prohibited the Association, "its agents, employees, officers and all persons acting with or on their behalf and the employers represented by [it]," from spotting within Allegheny County. It also required the Association to communicate the prohibition to all of these parties. Appendix at 73–74a. Consequently, the district court, in its August 14, 1980 order and memorandum opinion, held the Association in civil contempt for failing to notify its non-Allegheny County members of the injunction against spotting. The Association does not contest

the fact that it failed to notify those members; rather, it asserts that there was no duty to notify them because the injunction applied only to Association members maintaining terminal operations in Allegheny County. It asserts that its non-Allegheny County members are not in privity with its Allegheny County members, and hence could not be bound by the injunction. Alternatively, the Association argues that the district court lacked subject matter jurisdiction over non-Allegheny County members because section 301 limits jurisdiction to suits between employers and labor organizations having a contractual relationship. We reject both of these contentions, and hold that the district court properly held the Association in contempt.

### A.

■ The Association's first argument is that the injunction could not bind its non-Allegheny County members because they were not in privity with its Allegheny County associates. It contends that Rule 65(d),[5] which codified the common law concept of privity, restricts the parties bound by an injunction to those "so identified in interest with those named in the decree that it would be reasonable to conclude that their rights and interests had been represented and adjudicated in the original injunction proceeding." 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2956 at 560 (1973). This argument is inapposite, however, because Rule 65(d) and the privity rule speak only to which *non-parties* may be restrained by an injunctive order; in the instant case, it was the *Association*, not its non-Allegheny County members, that was held in contempt.[6] Hence,

5. Fed.R.Civ.P. 65(d) provides, in pertinent part, that injunctions shall be binding "only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

6. *Cf. General Foods Corp. v. Massachusetts Department of Public Health*, 648 F.2d 784, 787 (1st Cir. 1981). In that case, the court ruled that a judgment against a trade association of which General Foods was a member was res

judicata as to General Foods where General Foods was a member of the association and contributed towards the expenses of the case brought by the association. In addition, because the "challenged regulations did not affect the trade association itself but only its members," General Foods was chargeable with knowledge that the association's "standing to sue depended on its claim to represent its members as the real parties in interest. [Citation omitted.] The claim is to represent *all* the

the Association was obligated to provide notice to all of its member employers regardless of whether its Allegheny County and non-Allegheny County members were in privity for the purposes of the injunction. The Association's failure to do so gave rise to the district court's finding of contempt.

Although the Association erroneously couches its argument in terms of privity, what it is contending, in substance, is that the rights of its non-Allegheny County members were never at issue in this litigation. Consequently, it maintains that the injunction's restriction on spotting by "employers represented by the Defendant" was meant to apply only to Allegheny County member-employers. Therefore, the Association asserts that it was under no duty to inform its non-Allegheny County members of the injunctive order, and that the district court erred by holding it in contempt. We find this argument without merit.

▪ The language of the injunction indicates clearly that all Association members were to be prohibited from spotting. As the district court's memorandum opinion observed, "[t]here is not even a hint of qualification limiting the injunction to only Allegheny County members of the defendant." Appendix at 66a. The injunctive order gave the Association fair warning, in unambiguous terms, of what it was required to do. *United States v. Christie Industries, Inc.*, 465 F.2d 1002, 1006 (3d Cir. 1972). Moreover, after January 11, 1980— when the district court denied its motion for clarification of the injunction—the Association was apprised explicitly of the district court's interpretation of the injunction.

The Association maintains, however, that notwithstanding the order's language, the history of the litigation reveals that the interests of only its Allegheny County members were at stake. It asserts that it

filed its July 3, 1975 request for relief with the ECJAC on behalf of only Allegheny County employer-members. Our examination of that request does not lead us to the same conclusion. The Association identified itself as an organization representing the interests of carriers in twenty-nine counties of Western Pennsylvania, not just Allegheny County. It requested relief from spotting on behalf of its members, not merely its Allegheny County members, who had been placed at a competitive disadvantage. Appendix at 80–82a. In short, nothing in the text of the Association's July 3, 1975 letter to the ECJAC indicates that it was acting as the agent of only its Allegheny County members.[7]

The district court also examined the complaint for support of the Association's interpretation of the injunction. *See Christie Industries*, 465 F.2d at 1007. But, as the trial court observed, Local 249's complaint prayed for an end to all spotting by the Association's members within Allegheny County, not just spotting by Allegheny County employers. Appendix at 66–67a. Thus, the scope of relief given by the district court was entirely consistent with that requested by the plaintiff.

Finally, the Association asserts that the rights of non-Allegheny County members were not at stake in this lawsuit because those employers traditionally enjoyed the right to spot trailers within Allegheny County. This contention is directly contrary to the district court's understanding of the practice; in this matter we are not inclined to substitute our judgment for that of the learned trial judge who has presided over every phase of this protracted litigation. *See Dubern v. Girard Trust Bank*, 454 F.2d 565, 571 (3d Cir. 1972). Although the record is not uncontroverted, the resolution

members as a collective group." *Id.*; emphasis in original.

7. We are aware, of course, that our previous opinion in this litigation recited that "[o]n July 3, 1975 the Association, on behalf of Allegheny County employers, submitted a request to the [ECJAC] seeking relief from spotting restrictions." *Local 249*, 574 F.2d at 785–86. How-

ever, we agree with the district court that our characterization of the lawsuit as involving only the interests of Allegheny County members was inadvertent, because the question of whether the Association petitioned the ECJAC on behalf of all, or only some, of its members was not before us. *See* Appendix at 67a n.3.

of evidentiary ambiguities and contradictions was properly a task for the district court. *Indiana State Employees Ass'n, Inc. v. Negley*, 501 F.2d 1239, 1241 (7th Cir. 1974) ("appellate court must be especially circumspect in reviewing ... [the district court] ... when there was conflicting evidence on controverted issues of fact."). *See also United Barge Company v. Notre Dame Fleeting & Towing Service, Inc.*, 568 F.2d 599, 604 (8th Cir. 1978); *Dowell v. United States*, 553 F.2d 1233, 1235 (10th Cir. 1977).[8]

### B.

The Association also maintains that the injunction applies only to its Allegheny County members because jurisdiction under section 301(a) of the Labor Management Relations Act is limited to suits between employers and labor organizations in contractual relationships.[9] The Association argues that because Local 249 has contractual relations only with Allegheny County carriers employing the union's members, the district court lacked jurisdiction to enter an injunction purporting to bind non-Allegheny County employers. We disagree.

■ Appellant asserts correctly that a prerequisite for section 301 jurisdiction is a contract between the employer and labor organization. *Teamsters Local Union No. 30 v. Helms Express Inc.*, 591 F.2d 211, 217 (3d Cir.), *cert. denied*, 444 U.S. 837, 100 S.Ct. 74, 62 L.Ed.2d 48 (1979). We have emphasized, however, that "contracts" upon which section 301 suits may be brought are not limited to collective bargaining agreements. *Doubarn Sheet Metal, Inc. v. Sheet Metal Workers' International Ass'n, Local Union No. 19*, 547 F.2d 221, 224 (3d Cir. 1977). *See also Retail Clerks International Ass'n Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 25–28, 82 S.Ct. 541, 546–548, 7 L.Ed.2d 503 (1962). This is consistent with the explicit direction of the Supreme Court and this circuit that section 301 should not be read narrowly. *Smith v. Evening News Ass'n*, 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962); *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 456, 77 S.Ct. 917, 923, 1 L.Ed.2d 972 (1957); *Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, Local 120*, 647 F.2d 372, 380 (3d Cir. 1981).

■ In view of the mandate that section 301 be broadly construed, we find that Local 249 and the Association shared the requisite contractual relationship to vest the district court with section 301 jurisdiction over all of the Association's members.[10] We find that the interlocking network of agreements between and among the Association's Allegheny County and non-Allegheny County members, Local 249, and other Teamsters locals, created a "contract" giving the district court jurisdiction

---

**8.** Moreover, the district court's understanding of the history of spotting in Allegheny County appears to be supported by the record. At the June 23, 1976 hearing on Local 249's motion for injunctive relief, Charles M. Byrnes, the union's business agent, testified that spotting by Association members had traditionally been prohibited within Allegheny County, except by mutual agreement. Docket Entry No. 6 at 5–8. In addition, as Local 249 argues in this appeal, the June 23, 1976 hearing resulted in a stipulation by the Association's counsel that its non-Allegheny County members were not permitted to spot within Allegheny County. Docket Entry No. 6 at 47.

**9.** Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1976), provides:
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

**10.** Our finding of jurisdiction is based upon our assumption, for the purposes of this discussion only, that a contractual relationship was not provided by a single collective bargaining agreement. The Association is a signatory to a collective bargaining agreement with Local 249, but it asserts that this agreement was executed on behalf of only its Allegheny County members. We note, however, that we have been unable to find support for this contention in the record; moreover, it was rejected by the district court.

pursuant to section 301.[11] We are willing to infer such an agreement because, as the district court observed, it would promote the important goal of maintaining labor peace. *See Lion Dry Goods*, 369 U.S. at 28, 82 S.Ct. at 548.

Our holding is consistent with several decisions of this circuit. In *Local Union No. 115 v. Townsend & Bottum, Inc.*, 383 F.Supp. 1339 (W.D.Pa.1974), *aff'd mem.*, 521 F.2d 1399 (3d Cir. 1975), the district court held that an agreement to which each party has a significant relationship creates a contract for the purposes of assuming jurisdiction under section 301. In that case, the contractual relationship was provided by the employer's signature upon a National Construction Agreement which had been negotiated by a labor association of which Local 115 was a member. Similarly, in *Doubarn Sheet Metal*, we found evidence of a contract giving rise to section 301 jurisdiction between a Philadelphia union and a California employer even though neither the union nor the employer had signed the agreement negotiated by their respective national associations. We found that the parties' incorporation in their respective collective bargaining agreements of a standard form provision covering work by outside contractors "evidenced an agreement to have these terms govern any relations between them." 547 F.2d at 224. In *Doubarn Sheet Metal* and *Local 115*, this court was willing to construe liberally what constitutes a contract for purposes of section 301 for the same reason that we do so here: the maintenance of labor peace between employers and labor organizations. In light of this important objective, we hold that the district court had the power under section 301 to issue an injunction binding the Association's non-Allegheny County members.[12]

## IV.

The Association also asserts that the district court abused its discretion by: (1) awarding reasonable attorney's fees to Local 249; and, (2) refusing to modify the injunction. For the following reasons, we reject both of these contentions.

 As the district court concluded in its memorandum opinion, "there can be little doubt that 'in a civil contempt action occasioned by willful disobedience of a court order an award of attorney's fees may be authorized.'" Appendix at 70a, *quoting, Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). *See also Engine Specialties, Inc. v. Bombardier Limited*, 605 F.2d 1, 20 (1st Cir. 1979), *cert. denied*, 446 U.S. 983, 101 S.Ct. 259, 66 L.Ed.2d 123 (1980); *Vuitton et Fils, S. A. v. Carousel Handbags*, 592 F.2d 126, 130–31 (2d Cir. 1979). We also agree with the district court's conclusion that the Association's failure to notify its non-Allegheny County members subsequent to the court's January 11, 1980 denial of the Association's motion to clarify the injunction constituted willful disobedience of the court's order. Therefore, the district court did not abuse its discretion by awarding Local 249 reasonable attorney's fees incurred in prosecuting the contempt. *See Engine Specialties*, 605 F.2d at 20.[13]

---

11. For example, the Association and the various Teamsters locals were signatories to a National Master Freight Agreement covering over-the-road and local cartage employees of private, common, contract and local cartage carriers. In addition, the Association executed a Supplemental Agreement with Teamsters Joint Council No. 40 Freight Division, embracing the jurisdiction of Local 249 and 10 other locals. Docket Entries No. 16 & 17, Exhibit A.

12. Since there was no attempt to hold the non-Allegheny County members in contempt, we need not decide how the application of Fed.R. Civ.P. 65(d) would affect them.

13. Because we have no doubt that the Association's post-January 11, 1980 course of conduct constituted willful disobedience, we do not reach the interesting question of whether attorney's fees may be awarded in contempt proceedings even if the contemnor's conduct is not willfully disobedient. See *Cook v. Ochsner Foundation Hospital*, 559 F.2d 270, 272 (5th Cir. 1977). The leading case in this circuit on awarding attorney's fees in contempt proceedings does not speak to the question of willful disobedience. *Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113–14 (3d Cir. 1970).

The Association also challenges the district court's refusal to modify its injunctive order.[14] The district court dismissed the Association's motion by stating that "[t]he Court finds it inadvisable, and is without power, to change a consent injunction at the request of only one of the parties." Appendix at 71a. Appellant maintains that the injunction was, in fact, not a consent injunction. It argues that even if it were a consent injunction, the district court possessed the power to modify it, and should have done so.

■ We reject the Association's contention that the injunction entered by the district court on October 16, 1978 was not a consent injunction. As the district court observed, the order states that it was "consented to," and it is signed in that manner by the Association's attorney. Docket Entry No. 23 at 10. Accordingly, we find that the Association "made a free, calculated and deliberate choice to submit to an agreed upon decree." *Philadelphia Welfare Rights Organization v. Shapp*, 602 F.2d 1114, 1120 (3d Cir. 1979), *cert. denied*, 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 660 (1980). Nothing in the record indicates the contrary.

■ Although the district court misstated itself by declaring that it did not have the power to modify a consent injunction,[15] the party seeking the modification bears a heavy burden of showing circumstances so changed that "the danger which the decree sought to prevent has been 'attenuated to a shadow.'" *Philadelphia Welfare Rights*, 602 F.2d at 1120, *quoting United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464,

76 L.Ed. 999 (1932). *See also United States Steel Corporation v. Fraternal Association of Steel Haulers*, 601 F.2d 1269, 1274 (3d Cir. 1979).[16] The modification will. be granted only upon a showing of exceptional circumstances. *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977). We hold that the Association has failed to carry the heavy burden incumbent upon a party seeking to modify a consent injunction. Consequently, the district court did not abuse its discretion.

V.

For the foregoing reasons, the district court's August 14, 1980 order will be affirmed.

STAPLETON, District Judge, concurring in part and dissenting in part:

I concur with the conclusions reached in Section II of the Court's Opinion; I respectfully dissent from those reached in Sections III and IV.

Subject matter jurisdiction in this case is predicated on Section 301 of the Labor Management Relations Act and exists solely because the plaintiff union, Local 249, seeks redress for a "violation of [a] contract ... between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185. At this point, there is no dispute that the District Court properly enjoined employers with whom Local 249 had entered a collective bargaining agreement "from requiring any and all employees represented by ... [Local 249] to spot trailers in any area which has not been mutually agreed to between ... [Local 249 and the Association]." Order of October 11, 1978, Par. 3. The

---

**14.** Appellant asserts that we have plenary review of the district court's refusal to modify. This is incorrect; whether we characterize the Association's motion as a Rule 60(b) request for relief from judgment, or as one addressed to the equitable power of the court, the proper standard of review is whether the district court abused its discretion in denying the motion. *Securities and Exchange Commission v. Warren*, 583 F.2d 115, 118–21 (3d Cir. 1978).

**15.** The court did say that it found it "inadvisable" to change the consent injunction (¶ 26

*supra*). Therefore its statement that it was "without power" to effect the change, though in error, was harmless because it is evident that the court would not have exercised its discretion to change the decree. We find its failure to do so was not an abuse of discretion.

**16.** The district court's denial of the modification is properly reviewed under the same standard as a denial of a Rule 60(b) motion. *Philadelphia Welfare Rights*, 602 F.2d at 1119.

point currently at issue is whether the Court properly enjoined employers with whom Local 249 had not entered a collective bargaining agreement from requiring employees whom Local 249 did not represent to spot trailers in Allegheny County. The District Court held that it could properly do so and this Court today affirms that holding. Neither Court, however, has identified a contractual provision which entitles Local 249 to have non-Allegheny County employers refrain from spotting in Allegheny County. Because I am also unable to identify such a contractual provision, I would hold that the District Court's injunction, as ultimately construed by it, exceeded its jurisdiction.

The District Court confronted the jurisdictional issue and concluded that a contractual relationship between Local 249 and those enjoined was unnecessary:

> Lastly, defendant contends that plaintiff ... could only seek relief against defendant's Allegheny County employers who employ plaintiff's members. As such, it is urged that the injunction could only bind defendant's Allegheny County employers. *The underlying basis of this contention is the fact that plaintiff's only contractual relationship is with Allegheny County member employers.*
>
> Defendant's position in this regard is unjustified. The problem confronting plaintiff vis a vis defendant's non-Allegheny County employer members is substantial. These non-Allegheny County employers, unencumbered by any restriction on spotting, would be free to conduct business in Allegheny County armed with a significant competitive advantage. *Surely, plaintiff need not passively watch non-Allegheny County employers prosper within plaintiff's own jurisdiction at the expense of its own membership because there is no privity of contract.* This

Court believes that plaintiff could certainly request relief from practices of non-Allegheny County member employers of defendant who themselves have voluntarily chosen to transact business within plaintiff's jurisdiction. Were it otherwise, defendant's non-Allegheny County employer members would enjoy a gratuitous immunity from suit in connection with actions occurring within Allegheny County. Such an immunity would seriously jeopardize the ever present goal of industrial peace. (Emphasis supplied).

This conclusion is fundamentally unsound and conflicts with the well established law reviewed in *Teamsters Local 30 v. Helms Exp., Inc.*, 591 F.2d 211 (3d Cir. 1979). The purpose of Section 301 is to provide a federal forum for the enforcement of contractual obligations voluntarily assumed by employers or labor organizations. It does not empower the federal courts to grant relief when no underlying contractual right exists.

The majority opinion acknowledges the necessity of "a contractual relationship to vest the District Court with Section 301 jurisdiction over all of the Association's members." It then finds the "requisite ... relationship" in the "interlocking network of agreements between and among the Association's Allegheny County and non-Allegheny County members, Local 249, and other Teamster locals." The Court does not, however, identify any contractual provision which the injunction against the non-Allegheny County employers enforces.[1] In the absence of such a provision, I would hold that an injunction against those employers cannot stand.

---

1. Local 249's complaint alleged that the defendant Association was violating a restriction on spotting contained in Article 44 of a collective bargaining agreement referred to as the Supplemental Local Agreement. Article 44 is a "Maintenance of Standards" provision which contains a covenant that "the Employer" will maintain "all conditions of employment in his individual operation relating to wages, hours of work, overtime differentials and general working conditions ... at not less than the highest standards in effect at the time of the signing of" the agreement. On the basis of the current record, I am unwilling to hold that this provision was intended to create contract rights between an employer and a Union which does not represent any of that employer's employees.